NAME David Lee Henly

PRISON NUMBER V-24196

CURRENT ADDRESS OR PLACE OF CONFINEMENT

P.O. Box 3535

CITY, STATE, ZIP CODE

Norco,CA,92860

2254 ✓ 1983
FILING FEE PAID
Yes ___ No ✓
IFP MOTION FILED
Yes ✓ No ___
COPIES SENT TO
Court ✓ ProSe ___

FILED
JUN 18 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

(FULL NAME OF PETITIONER)

David Lee Henly Jr., PETITIONER

v.

(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED PERSON HAVING CUSTODY OF PETITIONER [E.G., DIRECTOR OF THE CALIFORNIA DEPARTMENT OF CORRECTIONS])

Matt Martel,Warden, RESPONDENT

and

The Attorney General of the State of California, Additional Respondent.

Civil No '08 CV 1085 JAH CAB

(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2254
BY A PERSON IN STATE CUSTODY

1. Name and location of the court that entered the judgment of conviction under attack:
   Superior Court of San Diego County
2. Date of judgment of conviction: June 6,2006
3. Trial court case number of the judgment of conviction being challenged:
   Scd 195421
4. Length of sentence: 8years



CR

**5.** Sentence start date and projected release date:

July 21,2006 - release March 12,2012

**6.** Offense(s) for which you were convicted or pleaded guilty (all counts):

Evading an officer with reckless driving VC 2800.2(A)

Driving when privilges were suspended for DUI VC14601.2(A)

**7.** What was your plea? (CHECK ONE)

(a) Not guilty [X]

(b) Guilty [ ]

(c) Nolo contendere [ ]

**8.** If you pleaded not guilty, what kind of trial did you have? (CHECK ONE)

(a) Jury [X]

(b) Judge only [ ]

**9.** Did you testify at the trial?

[ ] Yes [X] No

## DIRECT APPEAL

**10.** Did you appeal from the judgment of conviction in the **California Court of Appeal**?

[X] Yes [ ] No

**11.** If you appealed in the **California Court of Appeal**, answer the following:

(a) Result: Affirmed as modified

(b) Date of result (if known): December 10,2007

(c) Case number and citation (if known): D049072

(d) Names of Judges participating in case (if known):

Judge Robert F. Oneill

(e) Grounds raised on direct appeal:

see appellant opening brief"a"pg.i,ii,iii.

**12.** If you sought further direct review of the decision on appeal by the **California Supreme Court** (e.g., a Petition for Review), please answer the following:

(a) Result: Denied

(b) Date of result (if known): February 27,2008

(c) Case number and citation (if known):

S160257

(d) Grounds raised:

see appellant opening brief exihibit"A"pg.i,ii,iii.

also see petition for review exhibit"B"pg.2,3.

**13.** If you filed a petition for certiorari in the **United States Supreme Court**, please answer the following with respect to that petition: N/A

(a) Result:

(b) Date of result (if known):

(c) Case number and citation (if known):

(d) Grounds raised:

## COLLATERAL REVIEW IN STATE COURT

**14.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Superior Court**?

☐ Yes ☒ No

**15.** If your answer to #14 was "Yes," give the following information:

(a) **California Superior Court** Case Number (if known):

(b) Nature of proceeding:

(c) Grounds raised:

(d) Did you receive an evidentiary hearing on your petition, application or motion?

☐ Yes ☐ No

(e) Result:

(f) Date of result (if known):

**16.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Court of Appeal**?

☐ Yes ☒ No

**17.** If your answer to #16 was "Yes," give the following information:

(a) **California Court of Appeal** Case Number (if known):

(b) Nature of proceeding:

(c) Names of Judges participating in case (if known)

(d) Grounds raised:

(e) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☐ No

(f) Result:

(g) Date of result (if known):

**18.** Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions (e.g., a Petition for Writ of Habeas Corpus) with respect to this judgment in the **California Supreme Court**?
☐ Yes ☒ No

**19.** If your answer to #18 was "Yes," give the following information:

(a) **California Supreme Court** Case Number (if known):

(b) Nature of proceeding:

(c) Grounds raised:

(d) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☐ No

(e) Result:

(f) Date of result (if known):

**20.** If you did ***not*** file a petition, application or motion (e.g., a Petition for Review or a Petition for Writ of Habeas Corpus) with the **California Supreme Court**, containing the grounds raised in this federal Petition, explain briefly why you did not:

## COLLATERAL REVIEW IN FEDERAL COURT

**21.** Is this your **first** federal petition for writ of habeas corpus challenging this conviction?
[X] Yes [ ] No (IF "YES" SKIP TO #22)
(a) If no, in what federal court was the prior action filed?
(i) What was the prior case number?
(ii) Was the prior action (CHECK ONE):
Denied on the merits? [ ]
Dismissed for procedural reasons? [ ]
(iii) Date of decision:
(b) Were any of the issues in this current petition also raised in the prior federal petition?
[ ] Yes [ ] No
(c) If the prior case was denied on the merits, has the Ninth Circuit Court of Appeals given you permission to file this second or successive petition?
[ ] Yes [ ] No

**CAUTION:**

- **Exhaustion of State Court Remedies:** In order to proceed in federal court you must ordinarily first exhaust your state court remedies as to each ground on which you request action by the federal court. This means that even if you have exhausted some grounds by raising them before the California Supreme Court, you must first present ***all*** other grounds to the California Supreme Court before raising them in your federal Petition.
- **Single Petition:** If you fail to set forth all grounds in this Petition challenging a specific judgment, you may be barred from presenting additional grounds challenging the same judgment at a later date.
- **Factual Specificity:** You must state facts, not conclusions, in support of your grounds. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do. A rule of thumb to follow is — state who did exactly what to violate your federal constitutional rights at what time or place.

## GROUNDS FOR RELIEF

22. **State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States. Summarize *briefly* the facts supporting each ground.** (e.g. what happened during the state proceedings that you contend resulted in a violation of the constitution, law or treaties of the United States.) If necessary, you may attach pages stating additional grounds and/or facts supporting each ground.

**(a)** GROUND ONE:The trilal court violated appellant's federal due process right to a fair trial and abused its discretion by admitting unduly prejudicial evidence.

see appellants opening brief pg.7-17

**Supporting FACTS**:

see appellant opening brief exhibit"A"pg.7-17 for supporting facts.

Also see petition for review exhibit"B"pg.6-9

**Did you raise GROUND ONE in the California Supreme Court?**

[X] Yes [ ] No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for review

(2) Case number or citation: S160257

(3) Result (attach a copy of the court's opinion or order if available): petition for review was denied

**(b)** GROUND TWO:The trial court violated appellants sixth amendment right to confront the witness against him when it limited defense counsel's impeachment of officer Castro credibility.see appellant's opening

**Supporting FACTS:** briefpg.18-20

see appellant opening brief exhibit"A"pg.18-20 for supporting facts.
Also see petition for review exhibit"B"pg.9-11

**Did you raise GROUND TWO in the California Supreme Court?**

[X] Yes [ ] No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): Petition for review

(2) Case number or citation: S160257

(3) Result (attach a copy of the court's opinion or order if available):
petition for review was denied

(c) GROUND THREE: The trial court violated appellant sixth and fourteenth amendment right to a jury trial and due process when it imposed an upper term sentence based on finding of facts not submitted to the jury nor admitted by appellant.

**Supporting FACTS**: see appellant opening briefpg.20-31

see appellant opening brief exhibit"A" pg.20-31 for supporting facts.

also see petition for review exhibit"B"pg.11-14

**Did you raise GROUND THREE in the California Supreme Court?**

[X] Yes [ ] No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): petition for review

(2) Case number or citation: S160257

(3) Result (attach a copy of the court's opinion or order if available):

petition for review denied

(d) GROUND FOUR: The trial court imposed an unathorized sentence when it enhanced appellant'a sentence twice based upon the same underlying prior prison term for case#SCD174628

**Supporting FACTS:** see appellant's opening briefpg.31-34

see appellants opening brief exhibit"A" pg.31-34 for supporting facts.

also see petition for review exhibit"B" pg.14-16

**Did you raise GROUND FOUR in the California Supreme Court?**

☒ Yes ☐ No.

If yes, answer the following:

(1) Nature of proceeding (i.e., petition for review, habeas petition): petition for review

(2) Case number or citation: S160257

(3) Result (attach a copy of the court's opinion or order if available):
petition for review denied

**23.** Do you have any petition or appeal **now pending** in any court, either state or federal, pertaining to the judgment under attack?
☐ Yes ☒ No

**24.** If your answer to #23 is "Yes," give the following information:

(a) Name of Court:

(b) Case Number:

(c) Date action filed:

(d) Nature of proceeding:

(e) Name(s) of judges (if known):

(f) Grounds raised:

(g) Did you receive an evidentiary hearing on your petition, application or motion?
☐ Yes ☒ No

**25.** Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing . . . . . . . .

(b) At arraignment and plea . . . . . . .

(c) At trial . . . . Thomas J. Ochs
P.O. Box 7074
San Diego, CA, 92107

(d) At sentencing . . . . . . . . . . . . . . .

(e) On appeal . . . Patricia L. Brisbois
P.O. Box 518
Tualatin, OR, 97062

(f) In any post-conviction proceeding .

(g) On appeal from any adverse ruling in a post-conviction proceeding:

**26.** Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?
[X] Yes [ ] No

**27.** Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
[ ] Yes [X] No

(a) If so, give name and location of court that imposed sentence to be served in the future:

(b) Give date and length of the future sentence:

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
[ ] Yes [ ] No

**28.** Consent to Magistrate Judge Jurisdiction

In order to insure the just, speedy and inexpensive determination of Section 2254 habeas cases filed in this district, the parties may waive their right to procced before a district judge and consent to magistrate judge jurisdiction. Upon consent of all the parties under 28 U.S.C. § 636(c) to such jurisdiction, the magistrate judge will conduct all proceedings including the entry of final judgment. The parties are free to withhold consent without adverse substantive consequences.

The Court encourages parties to consent to a magistrate judge as it will likely result in an earlier resolution of this matter. If you request that a district judge be designated to decide dispositive matters, a magistrate judge will nevertheless hear and decide all non-dispositive matters and will hear and issue a recommendation to the district judge as to all dispositive matters.

You may consent to have a magistrate judge conduct any and all further proceedings in this case, including the entry of final judgment, by indicating your consent below.

Choose only one of the following:

[ ] Plaintiff consents to magistrate judge jurisdiction as set forth above.

**OR**

[X] Plaintiff requests that a district judge be designated to decide dispositive matters and trial in this case.

**29.** Date you are mailing (or handing to a correctional officer) this Petition to this court:

6-9-08

Wherefore, Petitioner prays that the Court grant Petitioner relief to which he may be entitled in this proceeding.

SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

6-9-08

(DATE)

SIGNATURE OF PETITIONER

Exhibit "A"

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION ONE**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>Plaintiff and Respondent,<br><br>vs.<br><br>DAVID LEE HENLY,<br>Defendant and Appellant. | Court of Appeal<br>No. D049072<br><br>Superior Court<br>No. SCD195421 |

**APPEAL FROM THE SUPERIOR COURT OF**

**SAN DIEGO COUNTY**

Honorable Robert F. O'Neill, Judge

---

**APPELLANT'S OPENING BRIEF**

---

Patricia L. Brisbois
State Bar No. 167180
P.O. Box 518
Tualatin, OR 97062
(503) 680-8683
By appointment of the Court of Appeal
under the Appellate Defender's Inc.
assisted case system for Appellant

## TOPICAL INDEX

PAGE

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF APPEALABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL AND ABUSED ITS DISCRETION BY ADMITTING UNDULY PREJUDICIAL EVIDENCE OF APPELLANT'S PRIOR ACTS OF FLEEING FROM LAW ENFORCEMENT TO SHOW INTENT AND MOTIVE TO EVADE THE POLICE INSOFAR AS THE ONLY CONTESTED ISSUE IN THE CASE WAS APPELLANT'S IDENTITY AS THE DRIVER. . . . . . . . . . . . . . . . . 7

A. Factual Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B. The Court Violated Appellant's Federal Due Process Right to a Fair Trial and Abused Its Discretion By Admitting the Prior Acts Evidence Because the Evidence Was Not Substantially Probative of Intent or Motive to Commit Felony Evading. . . . . . . . . . . . . . . . . . 10

C. The Substantial Prejudicial Effect of the Prior Acts Evidence Outweighed Any Probative Value It May Have Had. . . . . . . . . . . 13

D. Reversal is Required Because the Prior Acts Evidence Was So Prejudicial that It Rendered the Trial Fundamentally Unfair and the Error Cannot Be Deemed Harmless Under the Circumstances. . . . 16

II THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WHEN IT LIMITED DEFENSE COUNSEL'S IMPEACHMENT OF OFFICER CASTRO'S CREDIBILITY. . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TOPICAL INDEX (Continued)**

PAGE

A. Factual Overview. . . . . . . . . . 18

B. The Trial Court's Ruling Violated Appellant's Sixth Amendment Right to Confront Castro With Evidence That He Had Been Fired for Lying. . . . . . . . . . 19

III THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO A JURY TRIAL AND DUE PROCESS WHEN IT IMPOSED AN UPPER-TERM SENTENCE BASED ON FINDINGS OF FACT NOT SUBMITTED TO THE JURY NOR ADMITTED BY APPELLANT. . . . . . . . . . 20

A. Factual Overview. . . . . . . . . . 20

B. The Trial Court's Selection of the Upper Term Based on Aggravating Factors Not Admitted By Appellant or Submitted to a Jury for Determination Beyond a Reasonable Doubt Violated Appellant's Sixth and Fourteenth Amendment Rights. . . . . . . . . . 23

C. The Aggravating Factors Relied Upon By the Trial Court to Impose the Upper Term Sentence Do Not Come Within the *Almendarez-Torres* "Prior Conviction" Exception. . . . . . . . . . 24

D. The Trial Court's Error in Determining Aggravating Factors to Support an Upper Term Sentence Cannot Be Deemed Harmless Under the Circumstances Because Relying on Prior Conviction and Prison Term Allegations That Could Have Been But Were Not Stricken as Aggravating Factors Would Violate the Prohibition Against Dual Use of Enhancements. . . . . . . . . . 28

E. Appellant Did Not Forfeit His Sentencing Error Claim By Failing to Raise It in the Trial Court. . . . . . . . . . 30

## TOPICAL INDEX (Continued)

PAGE

IV THE TRIAL COURT IMPOSED AN UNAUTHORIZED SENTENCE WHEN IT ENHANCED APPELLANT'S SENTENCE TWICE BASED UPON THE SAME UNDERLYING PRIOR PRISON TERM FOR CASE NO. SCD-174628. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

A. Factual Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

B. The Trial Court Was Only Authorized to Impose a Single Prior Prison Term Enhancement Based on Case No. SCD-174628. . . . . 32

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

CERTIFICATION OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Almendarez-Torres v. United States* (1998) 523 U.S. 224
[118 S.Ct. 1219, 140 L.Ed.2d 350] . . . . . . . . . . . . . . . . . . . . 25

*Apprendi v. New Jersey* (2000) 530 U.S.466
[120 S.Ct 2348, 147 L.Ed.2d 435] . . . . . . . . . . . 23-24, 26, 31

*Blakely v. Washington* (2004) 542 U.S. 296
[124 S.Ct. 2531, 159 L.Ed.2d 403] . . . . . . . . . . . . . . . . 23, 31

*Chapman v. California* (1967) 386 U.S. 18
[87 S.Ct. 824, 17 L.Ed.2d 705] . . . . . . . . . . . . . . . . . . . . . . . 28

*Cunningham v. California* (2007) 549 U.S. ___
[127 S.Ct. 856, 2007 LEXIS 1324] . . . . . . . . . . . 23-24, 30-31

*Delaware v. Van Arsdall* (1986) 475 U.S. 673
[106 S.Ct. 1431, 89 L.Ed.2d 674] . . . . . . . . . . . . . . . . . 19-20

*Hale v. Morgan* (1978) 22 Cal.3d 388 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re Jessup* (1980) 109 Cal.App.3d 161 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Jones v. United States* (1999) 526 U.S. 227
[119 S.Ct. 1215, 143 L.Ed.2d 311] . . . . . . . . . . . . . . . . 25, 27

*People v. Anderson* (2001) 25 Cal.4th 543 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Birks* (1998) 19 Cal.4th 108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*People v. Black* (2005) 35 Cal.4th 1238 . . . . . . . . . . . . . . . . . . . . . . . . . . . 30-31

*People v. Bowden* (2002) 102 Cal.App.4th 387 . . . . . . . . . . . . . . . . . . . . . . . . . 27

*People v. Cattaneo* (1990) 217 Cal.App.3d 1577. . . . . . . . . . . . . . . . . . . . . . . . 34

*People v. Coleman* (1989) 48 Cal.3d 112 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*People v. Dotson* (1997) 16 Cal.4th 547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*People v. Espinoza* (1979) 99 Cal.App.3d 59 . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Ewoldt* (1994) 7 Cal.4th 380 . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12, 14

## TABLE OF AUTHORITIES (Continued)

**PAGE(S)**

**CASES (Continued)**


*People v. Fernandez* (1990) 226 Cal.App.3d 669 . . . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Garceau* (1993) 6 Cal.4th 140 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*People v. Harris* (2005) 37 Cal.4th 310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*People v. Hurley* (1983) 144 Cal.App.3d 706 . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*People v. Johnson* (1993) 15 Cal.App.4th 169 . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Kelly* (1983) 33 Cal.3d 267 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Kipp* (1998) 18 Cal.4th 349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Langston* (2004) 33 Cal.4th 1237 . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v. Lee* (2003) 111 Cal.App.4th 1310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*People v. Lopez* (1983) 163 Cal.App.3d 946 . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*People v. McGee* (2006) 38 Cal.4th 682 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*People v. Nguyen* (2007) 146 Cal.App.4th 1332 . . . . . . . . . . . . . . . . . . . . . . . 26-27

*People v. Partida* (2005) 37 Cal.4th 428 . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 16

*People v. Quartermain* (1997) 16 Cal.4th 600 . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Rivera* (1985) 41 Cal.3d 388 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Rowland* (1992) 4 Cal.4th 238 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Scheer* (1998) 68 Cal.App.4th 1009 . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Scott* (1994) 9 Cal.4th 331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .29, 34

*People v. Seel* (2004) 34 Cal.4th 535 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*People v. Smith* (2003) 110 Cal.App.4th 1072 . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*People v. Steele* (2000) 83 Cal.App.4th 212 . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*People v. Thompson* (1980) 27 Cal.3d 303 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*People v. Towne*, review granted July 14, 2004, S125677 . . . . . . . . . . . . . . . . . . 24

*Shepard v. United States* (2005) 544 U.S. 13
[125 S.Ct. 1254, 161 L.Ed.2d 205] . . . . . . . . . . . . . . . . 25-27

## TABLE OF AUTHORITIES (Continued)

PAGE(S)

**CASES (Continued)**

*U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Washington v. Recuneco* (2006) __ U.S. __
[126 S.Ct. 2546, 165 L.Ed.2d 466] . . . . . . . . . . . . . . . . . . . 28

**CONSTITUTION**

U.S. Const., 5th Amend. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

U.S. Const., 6th Amend. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 18-20, 23, 30-31

U.S. Const., 14th Amend. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10, 20, 23, 28

**STATUTES**

Evidence Code

section 352. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13-14

section 1101, subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

section 1101, subdivision (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 7-8, 10

Health and Safety Code

section 11351 ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Penal Code

section 18. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

section 245, subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

section 667, subdivisions (b) – (i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

section 667.5, subdivision (b) . . . . . . . . . . . . . . . . . . . . . . . . . 2, 29, 31, 34

section 667.5, subdivision (g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

section 668 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

section 969b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

section 1170, subdivision (b) . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 29-30

## TABLE OF AUTHORITIES (Continued)

PAGE(S)

**STATUTES (Continued)**

Penal Code (Continued)

section 1170.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

section 1237. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

section 1385 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Vehicle Code

section 2800.2, subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 7, 20

section 14601.2, subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2

**CALIFORNIA RULES OF COURT**

Rule 4.420(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Rule 4.420(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION ONE**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>Plaintiff and Respondent,<br><br>vs.<br><br>DAVID LEE HENLY,<br>Defendant and Appellant. | Court of Appeal<br>No. D049072<br><br>Superior Court<br>No. SCD195421 |

**APPEAL FROM THE SUPERIOR COURT OF**

**SAN DIEGO COUNTY**

Honorable Robert F. O'Neill, Judge

**APPELLANT'S OPENING BRIEF**

## INTRODUCTION

Appellant David Lee Henly challenges his convictions for evading an officer with reckless driving and driving with a suspended license (Veh. Code, §§ 2800.2, subd. (a), 14601.2, subd. (a)) and the resulting sentence on the following bases: (1) the trial court violated appellant's federal due process right to a fair trial and abused its discretion by admitting unduly prejudicial prior bad acts evidence under Evidence Code section 1101, subdivision (b); (2) the trial court violated appellant's Sixth Amendment right to confront the witnesses against him when it limited defense counsel's impeachment of a police officer's credibility; (3) the trial court violated appellant's Sixth and Fourteenth Amendment rights to a

jury trial and due process when it imposed an upper term sentence; and (4) the trial court imposed an unauthorized sentence when it enhanced appellant's sentence twice based on the same prison prior allegation and admission. As the result of these errors, appellant contends his convictions should be reversed or, in the alternative, the case should be remanded for resentencing.

## STATEMENT OF APPEALABILITY

This is an appeal from a final judgment following a jury trial, and it is authorized by Penal Code section 1237.

## STATEMENT OF THE CASE

On December 9, 2005, appellant was arraigned on charges of evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a)) and driving with a suspended license (Veh. Code, § 14601.2, subd. (a)). (Clerk's Transcript (CT) at p. 163.) A preliminary hearing was held on February 16, 2006, after which the magistrate found probable cause, but "not by much," to bind appellant over for trial. (Reporter's Transcript for February 16, 2006 ("PHT") at p. 39.)

A subsequently filed information further alleged, among other things, that appellant had suffered a prior strike conviction in 2004 and served a prior prison term (Pen. Code, §§ 667, subds. (b)–(i), 667.5, subd. (b), 668 & 1170.12). (CT at p. 3.) On May 30, 2006, the People filed an amended information adding a second prior prison term allegation relating to a 1990 conviction. (CT at p. 34.)

Trial commenced on May 31, 2006. The jury convicted appellant of both of the charged offenses. (CT at pp. 134-135, 184.) Appellant waived his right to a jury trial on the prior conviction and prison term allegations, and, in a

bifurcated proceeding, admitted the priors. (CT at pp. 183, 185; Vol. 5 Reporter's Transcript (5 RT) at pp. 339-342.)

At sentencing, the trial court imposed the upper term of three years for the felony evading count, which it then doubled to six years based upon the prior strike conviction. (CT at p. 187; Vol. 6 Reporter's Transcript (6 RT) at p. 464.) In addition, the court imposed two one-year sentences under Penal Code section 667.5, subdivision (b), resulting in an aggregated term of eight years. (CT at p. 187; 6 RT at pp. 464-465.) It then imposed sentence of 180 days in jail for the second count of driving with a suspended license, with credit for time served. (CT at p. 187; 6 RT at p. 465.) Appellant received a total of 342 days of presentence custody credits. (CT at p. 187; 6 RT at p. 464.) The court further imposed a $1,600 restitution fine, a $1,600 parole revocation fine (suspended unless parole is revoked), and a $20 court security fee. (CT at p. 187; 6 RT at p. 465.)

On July, 21, 2006, appellant filed a notice of appeal. (CT at p. 161.)

## STATEMENT OF FACTS

Around 2:45 a.m. on December 3, 2005, Officer David Marshall and his partner Mike Alberts were on patrol in the Mira Mesa area of San Diego when they responded to a domestic violence call. (Vol. 2 Reporter's Transcript (2 RT) at pp. 97-99.) They located the caller, Corrine Brown, on a residential street standing next to a silver Saab with a black convertible top. (2 RT at pp. 99-100.) The car had paper dealer plates and a temporary registration sticker on the front window. (2 RT 100.) Brown told the officers that appellant, her ex-boyfriend, had slapped her while they were in the car and that he had subsequently walked off with the car keys. (2 RT at pp. 101-102, 171.)

Marshall ran a records check and discovered appellant's driver's license had been suspended.[1] (2 RT at p. 102; 4 RT at p. 261.) After sending Brown home in a cab, the officers drove to a shopping center near the intersection of Camino Ruiz and Mira Mesa Boulevard. (2 RT at pp. 102-103.) At some point, a second patrol unit driven by Officer Martin Castro joined them in the parking lot. (2 RT at p. 106; Supplemental Reporter's Transcript (Supp. RT) at p. 3.)

Around 4:15 a.m., the officers saw the Saab being driven south on Camino Ruiz. (2 RT at p. 106.) Marshall testified that, as the patrol cars pulled out onto Camino Ruiz, the Saab accelerated toward the intersection and ran a red light at Camino Ruiz and Mira Mesa Boulevard. (2 RT at pp. 106-108.) Once this happened, Marshall activated the patrol car's lights and siren. (2 RT at pp. 108-109.)

Marshall testified the driver of the Saab passed a median with trees then made a hard left turn "and did basically like a 180, crossing the double yellow lines, making a U-turn;" the Saab ended up northbound on the eastbound lanes of Mira Mesa Boulevard, sliding to a stop on the wet pavement. (2 RT at pp. 109-110.) Marshall stopped his patrol unit about five to ten feet in front of the Saab while his partner turned the patrol car's spot light on the Saab. (2 RT at pp. 110, 112.) For two or three seconds, Marshall "had a good view of the driver," whom he later identified as appellant. (2 RT at pp. 110-111.)

Castro, the officer in the second patrol car, testified that the driver of the Saab "looked directly at [him]" after making the U-turn and that they were close enough for Castro to "see how sweaty he was." (Supp. RT at p. 6.) At trial, Castro identified appellant as the driver of the Saab. (Supp. RT at pp. 8, 14.)

---

[1] The parties stipulated at trial that appellant's driver's license had been suspended as a result of his prior conviction for driving under the influence of an alcoholic beverage. (Vol. 4 Reporter's Transcript (4 RT) at p. 261.)

The Saab next turned southbound on Camino Ruiz, running a red light at Mira Mesa Boulevard. (2 RT at p. 112.) The patrol units briefly pursued the Saab, which was driving at an estimated speed of 80 miles per hour in an area where the posted speed limit is 40 miles per hour. (2 RT at pp. 112-114.) The Saab passed two vehicles while being pursued. (2 RT at pp. 113-114.) The area through which the vehicle sped was a mix of business and residential. (2 RT at pp. 114-115.) For public safety reasons, the pursuit was called off after only one minute. (2 RT at p. 115; Vol. 3 Reporter's Transcript (3 RT) at p. 167.)

The police looked for appellant at the address listed on his driver's license, at the address of the person to whom the Saab was registered, and also at a residence in the Clairemont Mesa area; appellant was not found at any of these places. (2 RT at pp. 116-117.) The officers did not return to the location where they had first seen the Saab parked to check if it was still there. (2 RT at p. 135.)

At the end of their shift, Marshall had his partner obtain appellant's DMV photo. (2 RT at p. 117.) Marshall testified that when he saw appellant's photo he was certain appellant was the person he had seen driving the Saab that night. (2 RT at p. 118.) Although his partner only reported the officers got a good look at the left side of the driver's face, Marshall testified that he saw the front of the driver's face as well.[2] (2 RT at pp. 118-119.)

According to Marshall, the driver of the Saab looked directly at him after making the U-turn. (2 RT at p. 120.) Marshall admitted he never obtained the DMV photo of John Michael Goodman, the person to whom the Saab was registered. (2 RT at pp. 135-136;4 RT at p. 262.)

Brown testified at trial that she had been "extremely intoxicated" when she called the 911 operator that night and that she did not remember making the call. (3 RT at pp. 171, 173.) Brown also admitted she had a tendency to lie

---

2 Alberts had been deployed to Iraq and was not available to testify at trial. (2 RT at pp. 98-99.)

when intoxicated. (3 RT at p. 173.) A tape recording of the 911 call was played for the jury. (3 RT at p. 173; CT at pp. 59-74.)

During the call, Brown told the operator appellant's name, described what he had been wearing, and indicated the Saab was registered in someone else's name. (CT at pp. 63-67, 71.) At some point during the 911 call, Brown told the operator appellant had gotten back into the car with her. (CT at p. 68.) A male voice was heard on the tape asking Brown if she wanted a ride. (CT at p. 68.) Brown continued talking to the operator and explained she was a diabetic, but could not find her insulin. (CT at p. 70.) The male voice told Brown her insulin was in her purse; he also said he would stay until she found it and then he would take a cab home. (CT at p. 70.) Brown next informed the operator the man left the car and was in the process of walking away. (CT at pp. 70-71.)

Before trial, the court had ruled that the prosecution would be allowed to offer prior bad acts evidence to show appellant had the intent and motive to evade the officers. (1 RT at pp. 50-56.) As a result, the jury heard extensive testimony relating to appellant's arrest in May 2003 following a reported fight with a weapon and about his arrest in 1990 by federal agents during an undercover investigation. (3 RT at pp. 182-183; 4 RT at pp. 209-214, 221-223, 226-231.)

Goodman, the registered owner of the Saab, invoked his privilege against self-incrimination and did not testify before the jury. (4 RT at pp. 246-251.) However, a copy of his driver's license photograph was admitted into evidence, and the parties stipulated that the Saab was registered to him. (4 RT at pp. 261-262.)

# ARGUMENT

## I

## THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL AND ABUSED ITS DISCRETION BY ADMITTING UNDULY PREJUDICIAL EVIDENCE OF APPELLANT'S PRIOR ACTS OF FLEEING FROM LAW ENFORCEMENT TO SHOW INTENT AND MOTIVE TO EVADE THE POLICE INSOFAR AS THE ONLY CONTESTED ISSUE IN THE CASE WAS APPELLANT'S IDENTITY AS THE DRIVER.

### A. Factual Overview.

Pursuant to Vehicle Code section 2800.2, subdivision (a), appellant was charged with evading an officer with reckless driving. Before trial, the People moved to admit evidence under Evidence Code section 1101, subdivision (b) to show appellant had fled from the police on two previous occasions. (CT at pp. 20-27.) The People argued the evidence was relevant to show appellant's intent and motive to evade the police. (CT at pp. 20-21, 23; 1 RT at pp. 51-52.) Specifically, the prosecutor argued the prior acts would show that in 1990 and in 2003 appellant knew he was in trouble for something and tried to evade arrest by running away either in a car or on foot. (1 RT at pp. 52-53.)

Defense counsel opposed the motion and argued the evidence was not admissible because all it showed was appellant's propensity to commit similar crimes as prohibited by Evidence Code section 1101, subdivision (a). (CT at pp. 46-51; 1 RT at p. 55.) Specifically, defense counsel stated, "In this case, the bottom line issue is identity—who committed the crime—nothing else. The 'intent' of the perpetrator in this matter is 'not reasonably subject to dispute.'" (CT at p. 47.) He further argued the facts of the prior acts were too dissimilar to be relevant. (CT at p. 50; 1 RT at pp. 54-55.)

Finding the proffered evidence to be "directly probative as to what is at issue here," the trial court held it was admissible stating: "[T]he legal issue is whether or not [appellant] fled, whether or not he knew that the people he was fleeing from were police officers. That seems to be the actual issue in this case. So weighing it under [Evidence Code section] 352. I hold that the [section] 1101(b) evidence is probative, to what is at issue in this case. The court will allow it and the court will give it a limiting instruction." (1 RT at p. 55.)

Before the jury heard testimony regarding the prior bad acts, the court instructed the jury pursuant to CALCRIM No. 375.[3] (3 RT at pp. 180-181;

---

[3] The instruction was given as follows: "Evidence of uncharged offense to prove intent and motive. The People presented evidence not charged in this case that the defendant evaded law enforcement officers with reckless driving and fled law enforcement offices on foot on prior occasions. [¶] You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant did in fact commit the offenses. Proof by a preponderance of the evidence is a different proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true. [¶] If the People have not met this burden, you must disregard this evidence entirely. [¶] If you decide that the defendant committed the acts, you may, but are not required to, consider the evidence for the limited purpose of deciding whether or not the defendant acted with the intent to evade law enforcement officers in this case; or the defendant had a motive to commit the offense alleged in this case; or the defendant knew he was evading law enforcement officers when he allegedly acted in this case; or the defendant's alleged actions were the result of mistake or accident. [¶] In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and acts and the charged offenses. [¶] Do not consider this evidence for any other purpose except the limited purpose of determining the defendant's credibility. [¶] Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. [¶] If you conclude that the defendant committed the uncharged offenses, that conclusion is only one factor to consider along with all of the other evidence. It is not sufficient by itself to prove the defendant is guilty of evading officers with reckless driving and driving with a suspended or revoked license. [¶] The People must still prove each element of every charge beyond a reasonable doubt." (3 RT at pp. 180-181; CT at pp. 116-117.)

CT at pp. 116-117.) The trial court again instructed the jury pursuant to CALCRIM No. 375 before the park ranger testified and once more at the end of the trial. (4 RT at pp. 207-209, 273-274.)

The jury heard testimony from a police sergeant and a park ranger regarding an incident in May 2003. (3 RT at pp.181-189; 4 RT at pp. 209-218.) The park ranger was driving through a residential area when she saw appellant involved in an illegal act against another person. (4 RT at pp. 209-211.) The park ranger summoned the police department and then called out to appellant to stop and identify himself. (4 RT at pp. 211-212.) Appellant ran into the nearby residence of his cousin, John Goodman. (4 RT at pp. 212-213, 217-218.) When police arrived, appellant ran out the back of the residence, through the yard, and jumped over a fence. (3 RT at pp. 186-188.) The police found appellant hiding in a corner near the fence. (3 RT at p. 186.)

The jury also heard testimony from a federal agent regarding an incident in March 1990. (4 RT at pp. 221-237.) The agent, Will Glaspy, was conducting an undercover investigation when he met with a person who indicated appellant "was the source for the illegal items [the agent] was attempting to purchase." (4 RT at pp. 221-223.) Glaspy testified that the parties met in a parking lot to complete the sale. (4 RT at pp. 224-225.) After Glaspy gave a prearranged signal for other agents to move in for the arrest, appellant sped away at a high rate of speed. (4 RT at pp. 226-227.) The agents discontinued the pursuit out of concern for safety and because their cars could not keep up with appellant's vehicle. (4 RT at pp.228, 233.) Appellant was arrested 45 minutes later. (4 RT at pp. 231, 233.)

In addition to the foregoing, Glaspy further testified appellant had been driving a Camaro that was registered to his girlfriend. (4 RT at pp. 233-234.) When the agents arrived at the address to which the car was registered, they saw

appellant sitting on a curb apparently waiting for his girlfriend, who was arriving in a different vehicle. (4 RT at p. 233.) Glaspy heard appellant tell his girlfriend not to say anything. (4 RT at p. 234.) The trial court overruled defense counsel's objection to this testimony. (4 RT at p. 234.)

## B. The Court Violated Appellant's Federal Due Process Right to a Fair Trial and Abused Its Discretion By Admitting the Prior Acts Evidence Because the Evidence Was Not Substantially Probative of Intent or Motive to Commit Felony Evading.

The trial court abused its discretion when it ruled that appellant's prior acts of fleeing federal agents in a car and fleeing a park ranger and the police on foot were relevant to show his intent and motive in evading the police as charged in the present case. This error so fatally infected the proceedings that it rendered appellant's trial fundamentally unfair in violation of his Fourteenth Amendment right to due process of law because the jury improperly relied on the evidence as proof of appellant's identity as the driver of the car involved in the charged offense. "[T]he admission of evidence, even if error under state law, violates due process . . . if it makes the trial fundamentally unfair. [Citation.]"[4] (*People v. Partida* (2005) 37 Cal.4th 428, 436.)

Generally, evidence of a defendant's prior uncharged acts of misconduct is not admissible to prove he or she acted in the same manner to commit a charged offense unless such evidence is "relevant to prove some fact . . . other than his or her disposition to commit such an act." (Evid. Code, § 1101, subds. (a), (b); see also *People v. Ewoldt* (1994) 7 Cal.4th 380, 393.) Under Evidence Code section 1101, subdivision (b), evidence of a defendant's intent or

---

4 Appellant did not forfeit his due process claim even though it was not raised below. A defendant may contend for the first time on appeal that "the asserted error in overruling the trial objection had the legal consequence of violating due process." (*People v. Partida, supra*, 37 Cal.4th at pp. 431, 435.)

motive in committing acts of uncharged misconduct may be admissible if it is relevant to show he or she harbored the same intent or motive to commit the charged offense.

But "[t]here is an additional requirement for the admissibility of evidence of uncharged crimes: The probative value of the uncharged offense evidence must be substantial and must not be largely outweighed by the probability that its admission would create a serious danger of undue prejudice, of confusing the issues, or of misleading the jury. [Citation.]" (*People v. Kipp* (1998) 18 Cal.4th 349, 371; *People v. Ewoldt, supra,* 7 Cal.4th at pp. 404-405.) A court abuses its discretion in resolving these issues "when its ruling 'falls outside the bounds of reason.' [Citation.]" (*People v. Kipp, supra,* 18 Cal.4th at p. 371.)

Here, the trial court's ruling fell outside the bounds of reason because the only truly contested issue in the case was the identity of the driver who evaded the police. Consequently, the prior acts evidence was unnecessary to prove intent. Furthermore, the evidence was unduly prejudicial, and it is evident the trial court did not properly balance the prejudicial effect of the prior acts evidence when it made its ruling.

As the *Ewoldt* court explained, in cases where it is undisputed that the crime alleged was committed by someone, evidence of uncharged similar acts not "sufficiently distinctive to establish identity," are not admissible. (*People v. Ewoldt, supra,* 7 Cal.4th at p. 406.) This is because the issue of identity requires that the evidence show the prior act was committed in "the same unusual and distinctive manner as the charged offense . . . ." (*Id.* at p. 394, fn. 2.) The two acts must share identifying characteristics, not just common marks that make them similar. (*People v. Rivera* (1985) 41 Cal.3d 388, 392.) When identity is contested and prior act evidence is used to show intent, "if it is beyond dispute that the alleged crime occurred, such evidence would be merely cumulative and the

prejudicial effect of the evidence of uncharged acts would outweigh its probative value."[5] (*People v. Ewoldt, supra,* 7 Cal.4th at p. 406.)

In *Ewoldt,* the court reasoned that it was error to admit the prior act evidence to the extent the prior acts of sexual abuse in that case had been offered to prove the defendant's intent to commit the charged crime which he had denied committing. There, the evidence was such that, if the jury found the defendant engaged in the lewd acts testified to by the victim, "his intent in doing so could not reasonably be disputed. [Citations.]" (*People v. Ewoldt, supra,* 7 Cal.4th at p. 406.) Consequently, the court concluded "the prejudicial effect of admitting evidence of similar uncharged acts . . . would outweigh the probative value of such evidence *to prove intent*."[6] (*Ibid.*)

The same is true here. Once the jury determined appellant was the driver of the Saab that fled from the police officers, his intent in fleeing could not reasonably be disputed. The testimony of Officers Marshall and Castro regarding the driver's conduct showed the driver had full knowledge of their presence and intentionally evaded them when he fled the area by making an illegal U-turn, running a red light, and speeding away with the marked patrol units pursing him with their lights and sirens activated. It is abundantly clear that admitting the prior

---

5 Even though the *Ewoldt* court noted a defendant's decision not to contest an element of the charged offense does not relieve the prosecution from its burden to prove that element (*People v. Ewoldt, supra,* 7 Cal.4th at p. 400, fn. 4), it nevertheless concluded prior acts evidence admitted to prove an *uncontested* element such as intent may result in error if the issue of intent is undisputed by the evidence.

6 Although the *Ewoldt* court concluded the trial court erred in admitting the prior act evidence to show intent, it essentially deemed the error harmless because it also had been admitted for other proper purposes. (*People v. Ewoldt, supra,* Cal.4th at pp. 406-407.)

acts evidence to show intent was more than just merely cumulative, it was overkill to the extreme.[7]

The court also erred in admitting the prior act evidence to show appellant had a motive to evade the police. Here, there was ample evidence from the facts presented regarding the charged offense to establish a motive to evade the police. First, Brown called the 911 operator to report appellant had hit her while they were driving. The police responded to the call and took a report from Brown. Second, appellant's driver's license had been suspended. Thus, once the jury concluded appellant was the driver of the Saab, it had ample evidence from which to conclude he also had a motive to evade the police to prevent being charged with additional offenses. Consequently, the prior acts evidence was cumulative and unnecessary to demonstrate motive. And while motive, as an intermediate fact, may be probative of an ultimate issue such as intent (*People v. Scheer* (1998) 68 Cal.App.4th 1009, 1017), it cannot be said to be truly relevant when the issue of intent cannot reasonably be disputed.

**C. The Substantial Prejudicial Effect of the Priors Acts Evidence Outweighed Any Probative Value It May Have Had.**

Under Evidence Code section 352, courts have discretion to exclude evidence when the probative value of the evidence "is substantially outweighed by

---

[7] The facts of appellant's case are in stark contrast to those in *People . Johnson* (1993) 15 Cal.App.4th 169, a case heavily relied on by the prosecutor to support its motion in limine to admit the prior acts in this case. (CT at pp. 23-24, 27; 1 RT at p. 53.) In *Johnson*, the defendant drove the wrong way on the freeway while attempting to evade the police and killed another driver during a head-on collision. The defendant tried to refute the issue of intent by showing he was confused and had not intentionally driven the wrong way. The court determined that evidence showing "he had on another occasion utilized wrong-way driving as an evasion tactic" was properly admitted to refute this defense as was other evidence that the defendant had previously disregarded familiar traffic rules. (*Id.* at p. 176.)

the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Because the prior acts evidence in this case was merely cumulative and did not have substantial probative value to show intent or motive to commit the charged offense of reckless driving while evading an officer, it should have been excluded in light of its substantial prejudicial effect.

The "admission of [prior acts] evidence produces an 'over-strong tendency to believe the defendant guilty of the charge merely because he is a likely person to do such acts.' [Citation.] It breeds a 'tendency to condemn, not because he is believed guilty of the present charge, but because he has escaped unpunished from other offences . . . .' [Citation.] Moreover, 'the jury might be unable to identify with a defendant of offensive character, and hence tend to disbelieve the evidence in his favor.' [Citation.]" (*People v. Thompson* (1980) 27 Cal.3d 303, 317, disapproved on another ground in *People v. Rowland* (1992) 4 Cal.4th 238, 260.) Consequently, "under Evidence Code section 352, the probative value of the evidence must outweigh its prejudicial effect. [Citation.] Since 'substantial prejudicial effect [is] inherent in [such] evidence,' uncharged offenses are admissible only if they have *substantial* probative value. If there is any doubt, the evidence should be excluded. [Citation.]" (*People v. Thompson, supra*, 27 Cal.3d at p. 318, fns. omitted; see also *People v. Ewoldt, supra,* 7 Cal.4th at p. 404 [same].)

Not only was the testimony about the prior acts time consuming, it was also very damaging to appellant because the highly offensive nature of related the crimes was indirectly communicated to the jury. Sergeant Derning testified that he responded to the scene during the 2003 incident after receiving a call about "a fight with a weapon." (3 RT at p. 183.) The sergeant had been told the suspect, later identified as appellant, had run into a house after being involved in an

altercation. (3 RT at pp. 183, 188.) Likewise, the park ranger testified to seeing appellant perform an illegal act that involved another person. (4 RT at p. 211.)

From the testimony of these two witnesses, the jury easily could discern appellant had either threatened or possibly even injured another person. *This very damaging evidence had nothing to do with the intent or motive to evade an officer by driving recklessly since appellant fled on foot.* Although appellant was never charged with any offense based on Brown's accusation that he hit her before she called the 911 operator, the jury may have wanted to punish him for that alleged conduct after they heard the 2003 offense involved an act of violence. Simply put, appellant's conduct during the 2003 incident was not sufficiently similar to the charged offense to be particularly relevant. And because evidence relating to the incident was substantially prejudicial, it should have been excluded.

Agent Glaspy's testimony about the 1990 incident was equally damaging to appellant to the extent it was abundantly clear from the agent's testimony that the incident involved the sale of illegal narcotics. Glaspy testified he was acting undercover and planned to purchase illegal items from appellant. (4 RT at pp. 223-224.) Glaspy's testimony that appellant changed the location for the transfer to a large empty parking lot made it clear to the jury that appellant was in charge of the illegal operation. (4 RT at p. 225.) In discussing a photograph of appellant reviewed by the agent, Glaspy explained the original photograph was part of the "D.E.A. case law." (4 RT at p. 232.) It is common knowledge that "D.E.A." is an acronym for the federal drug enforcement agency. The jury may have inferred from this evidence that appellant was a drug dealer.

Glaspy also testified that the vehicle appellant had been driving was registered, not to appellant, but to his girlfriend. (4 RT at pp. 233-234.) The jury may have inferred from this evidence, coupled with the inference appellant had been attempting to sell illegal narcotics, that it was his practice or habit to have his own vehicles registered in another person's name. While other innocent

explanations exist, e.g., appellant did not own a car or did not have funds to buy his own vehicle, viewed in context with the facts associated with the charged offense, it is unlikely the jury would have credited such an innocent explanation to him. Furthermore, the fact the vehicle involved in the 1990 incident was registered to another person was not relevant in any way to the issue of intent or motive to evade the police 15 years later.

Evidence of both the 1990 and 2003 incidents was substantially prejudicial to appellant. Because this evidence lacked substantial probative value, it should have been excluded. The trial court abused its discretion in failing to properly balance these considerations, and, in so doing, rendered appellant's trial fundamentally unfair in violation of his right to due process of law.

**D. Reversal is Required Because the Prior Acts Evidence Was So Prejudicial that It Rendered the Trial Fundamentally Unfair and the Error Cannot Be Deemed Harmless Under the Circumstances.**

The prior acts evidence was extremely prejudicial to appellant, particularly because his defense was that Goodman, the registered owner of the Saab, was the person who evaded the police that night. More significantly, this evidence resulted in improperly *lessening* the prosecution's burden to prove a central issue—appellant's identity as the driver of the fleeing vehicle. Thus, its admission violated appellant's constitutional right to due process of law. (See *People v. Partida, supra,* 37 Cal.4th at p. 436; see also *People v. Garceau* (1993) 6 Cal.4th 140, 186 [assuming without deciding that federal harmless error standard applied].)

It was undisputed the Saab was registered to Goodman, and exhibits depicting the similarities between appellant's and Goodman's physical characteristics were admitted into evidence. The driver's license data and

photographs show the two men have the same hair and eye coloring, and they are of similar ages, height, and weight. (See Defendant's Exhibit G [DMV Image of John Mike Goodman, Jr.]; People's Exhibit 2 [DMV Image of David Lee Henly, Jr.]; 2 RT at p. 117; 4 RT at pp. 239, 262.)

The evidence also showed the officers contacted Brown at 3:04 a.m., after her companion had walked away from the Saab. (3 RT at p. 158.) Brown had identified appellant to the 911 operator and police as the person who had been in the car with her that evening. (CT at pp. 63-68, 71.) But, as she later testified, she had been extremely intoxicated that night, and she also had a tendency to lie when intoxicated. (3 RT at pp. 171, 173.)

The pursuit did not commence until 4:15 a.m., more than an hour after the police contacted Brown. (3 RT at p. 158.) Even if the jury believed appellant had been with Brown earlier, it is not inconceivable that, during the intervening hour, Goodman had been contacted about the vehicle and had come to retrieve it. The officers admitted they never looked at Goodman's photo even though they knew the car was registered to him. (2 RT at pp. 135-136; 4 RT at p. 262.) Thus, it was entirely plausible the registered owner of the vehicle, and not appellant, was the person who retrieved the Saab from its parked location and then fled from the officers.

But after hearing the detailed evidence of appellant's prior conduct, the jury readily decided appellant was, indeed, the driver of the Saab. The extraneous testimony about events completely unrelated to the charged offense placed appellant in such a bad light that the jurors could not reasonably be expected to abide by CALCRIM No. 375 and limit their consideration of that evidence solely to the issues of intent and motive. Under the circumstances, the error in admitting the prior act evidence cannot be deemed harmless, and appellant's conviction for felony evading must be reversed.

## II

## THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WHEN IT LIMITED DEFENSE COUNSEL'S IMPEACHMENT OF OFFICER CASTRO'S CREDIBILITY.

### A. Factual Overview.

Before trial, the prosecutor informed the trial court that one of the prosecution witnesses, Officer Castro, had been terminated from the police department "for allegedly lying about a dent in his police car." (1 RT at p. 56.) The prosecutor explained Castro was appealing the decision to terminate his employment. (1 RT at p. 56.) The prosecutor moved to limit the extent of defense counsel's inquiry into the incident stating, "it could be said [Castro] was fired for lying, but not the details of the incident because he is trying to get his job back and does not want to discuss that." (1 RT at p. 56.)

The trial court asked when Castro had been "unfairly terminated." (1 RT at p. 57.) The prosecutor responded that the termination happened two months after appellant's arrest, but the incident leading to the termination occurred seven months before the arrest. (1 RT at p. 57.) The parties then related the details of the incident to the court. (1 RT at pp. 57-58; see also 2 RT at pp. 66-68.) Defense counsel argued the reason for Castro's termination was relevant because Castro was one of the officers who claimed to have identified appellant as the driver of the Saab and Castro had "lied in the past." (1 RT at p. 58.)

The court ruled the facts underlying the incident that led to Castro's termination were collateral and unduly time consuming. (2 RT at pp. 70-71.) When defense counsel stated the incident was probative of the fact Castro lied to his superiors, the court stated, "I am not sure that's been adjudicated yet. The fact some supervisor may have formed the opinion that he lied about something, that doesn't come in. The opinions do not come in." (2 RT at p. 71.) The court then

limited inquiry into the incident to the fact Castro was no longer a police officer and that he had been terminated by the police department. (2 RT at pp. 71-72.)

At trial, Castro testified he worked for the police department at the time of appellant's arrest, he had since been terminated for reasons unrelated to appellant's case, and he was appealing his termination. (Supp. RT at pp. 1-2, 9.)

**B. The Trial Court's Ruling Violated Appellant's Sixth Amendment Right to Confront Castro with Evidence that He Had Been Fired for Lying.**

The trial court's ruling prohibiting defense counsel from asking Castro if he had been terminated from his job as a police officer for lying violated appellant's constitutional right to confront Castro with evidence that would have directly impeached his credibility.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' The right of confrontation . . . 'means more than being allowed to confront the witness physically.' [Citation.] Indeed, '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity for cross-examination.*' [Citation.]" (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678 [106 S.Ct. 1431, 89 L.Ed.2d 674].)

"In determining the credibility of a witness, the jury may consider any matter that has a tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to: a witness's character for honesty or veracity or their opposites; the existence or nonexistence of a bias, interest, or other motive; his attitude toward the action in which he testifies or toward the giving of testimony; and his admission of untruthfulness. [Citation.]" (*People v. Harris* (2005) 37 Cal.4th 310, 337.)

A trial court's limitation on cross-examination relating to the credibility of a witness violates the Confrontation Clause of the Sixth Amendment if "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of questioning." (*Delaware v. Van Arsdall, supra,* 475 U.S. at p. 680; see also *People v. Anderson* (2001) 25 Cal.4th 543, 608; *People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.) As explained in *Van Arsdall,* "the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." (*Delaware v. Van Arsdall, supra,* 475 U.S. at p. 680.)

Here, the prejudice to appellant is obvious because Castro testified that he was positive appellant was the driver of the Saab. (Supp. RT at pp. 8, 14.) Had the jurors been allowed to hear that Castro had been terminated for lying, they reasonably may have gotten a significantly different impression of his credibility. It was one thing for the jurors to hear that Castro had been fired, it would have been quite another thing for them to have heard he had been fired for lying.

In short, the trial court's error cannot be deemed harmless beyond a reasonable doubt, and appellant's conviction must be reversed.

## III

## THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS TO A JURY TRIAL AND DUE PROCESS WHEN IT IMPOSED AN UPPER-TERM SENTENCE BASED ON FINDINGS OF FACT NOT SUBMITTED TO THE JURY NOR ADMITTED BY APPELLANT.

### A. Factual Overview.

Appellant's conviction for violating Vehicle Code section 2800.2, subdivision (a), in conjunction with Penal Code section 18, exposed him to three

possible terms of punishment—16 months (low term), two years (mid term), or three years (upper term). At sentencing, the trial court selected the upper term of three years, which it then doubled to six years based upon appellant's prior strike conviction. (CT at p. 187; 6 RT at p. 464.) In so doing, the court relied on matters relating to appellant's criminal history presented solely through the probation officer's report that were neither alleged in the amended information nor submitted to the jury for any factfinding.

The court specifically set forth its findings in the record, beginning with appellant's juvenile adjudications occurring in 1982, 1984, 1986, and 1987. (6 RT at pp. 458-459; CT at pp. 144-145.) The court then recounted the lengthy list of appellant's convictions as an adult, commencing in 1987 through the present offense. (6 RT at pp. 459-462; CT at pp. 145-150.)

Details noted by the court in regard to each of these offenses were derived exclusively from the probation officer's report. For example, in regard to appellant's federal conviction in 1990, the court stated: "March of 1990, Drug Enforcement Administration arrest, possession of controlled substance with intent to distribute, aiding and abetting. . . . [¶] In that case, he met with an undercover D.E.A. agent, confidential informant, to purchase three pounds of crystal methamphetamine. And after the sale was complete, the agents attempted to arrest him, but he escaped with narcotics, and during the escape, he hit several vehicles with his vehicle. And after several days of surveillance, he was apprehended and the narcotics were confiscated."[8] (6 RT at pp. 460-461; CT at p. 147.) Such details were not admitted by appellant when he admitted the alleged prison prior in that case for "possession of a controlled substance . . . ." (5 RT at p. 341.)

---

8 Although some of these details were elicited during the trial in regard to the prior acts evidence, the jurors were specifically instructed pursuant to CALCRIM No. 375 they only needed to find the fact of the prior acts true based on a preponderance of the evidence. Thus, the prior acts were not determined true beyond a reasonable doubt.

In regard to the 2003 offense of assault with a deadly weapon, the court noted appellant also had been *charged*, as opposed to convicted, with three separate drug offenses and one count of domestic violence against "Corrine Brown, who was a witness in the case that we just tried." (6 RT at p. 461; see also CT at p. 148.) The probation officer's report showed appellant pleaded guilty to one count of assault with a deadly weapon and one count of possession of a controlled substance, and the other charges were dismissed. (CT at p. 148.)

In summing up its reasons for selecting the upper term, the court stated: "The tragedy in this case, counsel, is that I can't give Mr. Henly more time than eight years. He hasn't learned. He wants to go back to prison. He continually violates probation. He violates parole. He goes back and he does the same activity he did before. He has been offered programs before, they haven't assisted." (6 RT at p. 462.) The court listed three factors in aggravation from the probation report as "Prior convictions, [appellant] was on parole at the time this occurred, prior performance on probation parole unsatisfactory." (6 RT at p. 463.)

The court then concluded its findings by stating, "So for the reasons I have indicated and incorporated by reference to the probation officer's report, probation is denied. The defendant is committed to the Department of Corrections for the term of eight years. . . . [¶] . . . . [¶] So the upper term of three years as to Count One is selected, and it's doubled pursuant to the strike law. So it is six years. [¶] One year for the prison prior in SCD-174628. [¶] Additional one year for the second prison prior in SCD-174628. [¶] So the total sentence is eight years." (6 RT at pp. 464-465.)

**B. The Trial Court's Selection of the Upper Term Based on Aggravating Factors Not Admitted By Appellant or Submitted to a Jury for Determination Beyond a Reasonable Doubt Violated Appellant's Sixth and Fourteenth Amendment Rights.**

In selecting the upper term, the record shows the trial court relied on the probation officer's report, which summarized appellant's juvenile and adult criminal history, to find circumstances in aggravation to support its sentencing decision. The vast majority of the information contained in the probation officer's report was not alleged in the information. Neither was it submitted to the jury for any factfinding, nor admitted by appellant. Consequently, the court's sentencing choice violated appellant's Sixth and Fourteenth Amendment rights to a jury trial and due process.

In *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435], the United States Supreme Court held that, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) The Court later explained "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." (*Blakely v. Washington* (2004) 542 U.S. 296, 303-304 [124 S.Ct. 2531, 159 L.Ed.2d 403].)

Most recently, the high court firmly pronounced that the middle term sentence under California's determinate sentencing law (DSL) is the maximum sentence a judge may impose based on the facts reflected in the jury's verdict or otherwise admitted by the defendant. (*Cunningham v. California* (2007) 549 U.S. ___ [127 S.Ct. 856, 2007 U.S. LEXIS 1324 at pp. *35, *44].) In reaching this conclusion, the Court stated, "Because circumstances in aggravation are found by the judge, not the jury, and need only be established by a preponderance of the

evidence, not beyond a reasonable doubt, . . . the DSL violates *Apprendi*'s bright-line rule . . . ." (*Cunningham v. California, supra,* 2007 LEXIS at p. *35.)

Focusing its attention on the language of Penal Code section 1170, subdivision (b), the *Cunningham* Court explained, "The key California Penal Code provision states that the sentencing court '*shall order* imposition of the middle term' absent 'circumstances in aggravation or mitigation of the crime,' § 1170(b) (emphasis added), and any move to the upper or lower term must be justified by 'a concise statement of *the ultimate facts*' on which the departure rests, [former] Rule 4.420(e) [of the California Rules of Court] . . . ." (*Cunningham v. California, supra*, 2007 LEXIS at p. *30, fn. 10.)

The *Cunningham* decision has turned the DSL on its head, and it unravels the very basis for the trial court's selection of the upper term sentence in this case. Appellant's rights under the Sixth and Fourteenth Amendments were violated because the trial court made an independent determination of facts, not found by the jury and not established beyond a reasonable doubt, to impose the upper term sentence.

### C. The Aggravating Factors Relied Upon By the Trial Court to Impose the Upper Term Sentence Do Not Come Within the *Almendarez-Torres* "Prior Conviction" Exception.

The aggravating factors found by the trial court to support its decision to impose the upper term sentence were related to appellant's recidivism. These factors included appellant's juvenile offense history and his poor performance on probation and parole.[9] (CT at p. 153; 6 RT at pp. 458-463.) In addition, beyond appellant's admission of the prior strike conviction and two prison priors, the court considered appellant's adult convictions based solely on

[9] The question of whether an upper term sentence may be imposed based upon such factors is currently pending before the California Supreme Court in *People v. Towne*, review granted July 14, 2004, S125677.

information supplied in the probation officer's report. In so doing, the trial court exceeded the scope of the prior conviction exception established in *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [118 S.Ct. 1219, 140 L.Ed.2d 350].

In *Almendarez-Torres*, the Supreme Court, in interpreting 18 U.S.C. § 1326, held that the defendant's recidivism did not constitute an element of the charged offense and, therefore, his sentence for the offense was properly enhanced based on his prior conviction even though the prior conviction had not been charged in the indictment. (*Almendarez-Torres v. United States, supra,* 523 U.S. at p. 226.)

The next term, in *Jones v. United States* (1999) 526 U.S. 227 [119 S.Ct. 1215, 143 L.Ed.2d 311], the Supreme Court distinguished its holding in *Almendarez-Torres* from the facts at hand, explaining: "The Court's repeated emphasis on the distinctive significance of recidivism leaves no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing. . . . One basis for the possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." (*Jones v. United States, supra,* 526 U.S. at p. 249.)

Thereafter, the Court decided *Apprendi* and, after a lengthy discussion of *Almendarez-Torres* and *Jones*, held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey, supra,* 530 U.S. at p. 490.)

Recently, in *Shepard v. United States* (2005) 544 U.S. 13 [125 S.Ct. 1254, 161 L.Ed.2d 205], the Supreme Court expressly limited its holding in *Almendarez-Torres*. At issue in *Shepard* was the sort of information the

sentencing court could look at in order to determine whether the defendant's prior state convictions for burglary constituted violent felonies under federal law and thus subjected the defendant to an enhanced sentence. The Court determined "the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." (*Shepard v. United States, supra,* 544 U.S. at p. 16.)

Consequently, even though the factual dispute in *Shepard* involved a prior conviction, the Court concluded that *Almendarez-Torres* did not authorize sentencing courts to resolve such disputes by relying on documents that were not part of the record of the prior conviction because such reliance "was too much like the findings subject to *Jones* and *Apprendi* . . . ." (*Shepard v. United States, supra,* 544 U.S. at p. 25.)

*Shepard* makes it clear that a sentencing court cannot adopt wholesale the information supplied in a probation officer's report to make factual findings in aggravation relating to a defendant's recidivism. Rather, *Shepard* indicates a sentencing court's factual findings must be supported by proof similar to that required to establish the truth of a prior conviction for statutory enhancement purposes.[10] (See, e.g., Pen. Code, § 969b.)

It is now abundantly clear appellant's juvenile offense history was improperly considered by the trial court because those adjudications were made without the right to a jury trial. As recently determined in *People v. Nguyen* (2007) 146 Cal.App.4th 1332, "a juvenile adjudication is not a prior conviction with the meaning of *Apprendi* because the juvenile offender does not have the

[10] To the extent the Attorney General may argue a contrary view based on *People v. McGee* (2006) 38 Cal.4th 682, appellant notes that case is distinguishable from *Shepard* because the trial court in *McGee* examined transcripts from the defendant's prior Nevada convictions to determine whether the related offenses qualified as serious felonies for purposes of the Three Strikes law. (See *People v. McGee, supra,* 38 Cal.4th at p. 708, fn. 10.)

right to a jury trial." (*People v. Nguyen, supra,* 146 Cal.App.4th at p. 1361; see also *U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187, 1194 ["the 'prior conviction' exception does not include nonjury juvenile adjudications"].) Consequently, "using a juvenile adjudication to enhance the sentence in a criminal case is a constitutionally impermissible use of a nonjury judgment to prove the fact of recidivism under *Apprendi.*" (*People v. Nguyen, supra,* 146 Cal.App.4th at p. 1359.)[11]

The conclusion in *Nguyen* is consistent with the rationale set forth in *Shepard* regarding the underlying concerns of *Jones* and *Apprendi*, in that, "the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of a state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." (*Shepard v. United States, supra,* 544 U.S. at p. 25.) Because juveniles, unless tried as an adult, are not entitled to a jury trial, the history of their juvenile adjudications cannot be used as factors in aggravation to support an upper term sentence without violating the federal Constitution.

The court's finding in aggravation that appellant's performance on probation and parole was poor likewise falls outside of the prior conviction exception because such facts were not established based on the record of a prior

---

11 Appellant acknowledges that cases preceding *Nguyen* reached a different result. (See, e.g., *People v. Lee* (2003) 111 Cal.App.4th 1310; *People v. Smith* (2003) 110 Cal.App.4th 1072; *People v. Bowden* (2002) 102 Cal.App.4th 387.) But those cases, like *Nguyen*, dealt with the validity of prior juvenile adjudications under the Three Strikes law. As pointed out in *Bowden*, unlike the use of a prior juvenile adjudication to impose an aggravated sentence based upon judicial factfinding, procedural safeguards exist to prove a qualifying prior strike conviction, i.e., the prior must be pleaded and proven, and the defendant has the right to a jury trial to prove the prior conviction allegation. (*People v. Bowden, supra,* 102 Cal.App.4th at pp. 392-393.) Such safeguards are nonexistent in this case in regard to the prior juvenile adjudications set forth in the probation officer's report.

judicial proceeding with the procedural safeguards necessarily embodied within the typical record of a prior conviction.

Because the findings at issue in appellant's case, beyond his bare admission to the two prior prison terms and prior strike conviction, were not supported by "a prior judicial record," the trial court improperly relied on those factors to impose the upper term.

Furthermore, the trial court's findings were not made beyond a reasonable doubt, but were based on a preponderance of evidence standard. Thus, on remand, the People must be precluded from charging appellant with any previously uncharged aggravating factors based on the prohibition against double jeopardy under the Fifth and Fourteenth Amendments. (See *People v. Seel* (2004) 34 Cal.4th 535, 548-550 [evidentiary insufficiency barred retrial of premeditation allegation under Double Jeopardy Clause].)

**D. The Trial Court's Error in Determining Aggravating Factors to Support an Upper Term Sentence Cannot Be Deemed Harmless Under the Circumstances Because Relying on Prior Conviction and Prison Term Allegations That Could Have Been But Were Not Stricken as Aggravating Factors Would Violate the Prohibition Against Dual Use of Enhancements.**

In *Washington v. Recuneco* (2006) __ U.S. __ [126 S.Ct. 2546, 165 L.Ed.2d 466], the Supreme Court held the "[f]ailure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error." (*Id.* at p. __, 126 S.Ct. at p. 2553.) Thus, to the extent constitutional harmless error analysis applies (*Chapman v. California* (1967) 386 U.S. 18, 21 [87 S.Ct. 824, 17 L.Ed.2d 705]), appellant contends the court's error in this case cannot be deemed harmless beyond a reasonable doubt because, once distilled to its essence, the only permissible factors which the court could have considered were those

based upon appellant's admissions to the prior conviction and prison term allegations.

Even though appellant admitted the prior strike conviction and two prison priors, these factors were not sufficient to support the court's findings in aggravation to impose the upper term sentence to the extent the court also imposed the enhancements related to those priors.[12]

Generally, a court cannot use the same fact to aggravate the base term and impose a sentence enhancement. (*People v. Scott* (1994) 9 Cal.4th 331, 350.) Specifically, "The court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law." (Pen. Code, § 1170, subd. (b).)

"To comply with section 1170(b), a fact charged and found as an enhancement may be used as a reason for imposing the upper term *only if the court has discretion to strike the punishment for the enhancement and does so.* The use of a fact of an enhancement to impose the upper term of imprisonment is an adequate reason for striking the additional term of imprisonment, regardless of the effect on the total term." (Cal. Rules of Court, rule 4.420(c); emphasis added.)[13] For example, it is settled that "a trial court may not impose a [Penal Code] section 667.5 enhancement *and* consider in aggravation that '[the] defendant has served prior prison terms whether or not charged or chargeable as an enhancement under section 667.5.' [Citation.]" (*People v. Hurley* (1983) 144 Cal.App.3d 706, 720; see also *People v. Coleman* (1989) 48 Cal.3d 112, 163-164.)

---

[12] In section IV, infra, appellant challenges the trial court's imposition of two one-year enhancements under the same case, no. SCD-174628. If this Court agrees with appellant's claim of error in this regard, the matter, at minimum, should be remanded to determine whether the trial court intended to impose or strike the enhancement based on appellant's admission to the prison prior relating to federal case number 90-0298-01GT.

[13] All references to the California Rules of Court are to the rules in effect at the time of appellant's sentencing.

By the same token, the dual use of appellant's admission to the prior strike conviction to double his sentence and impose the upper term is prohibited under Penal Code section 1170, subdivision (b).

To avoid the dual use prohibition, the court had to explicitly exclude reliance on the prior conviction and prison term allegations used as sentence enhancements when it imposed the aggravated term. (See *People v. Fernandez* (1990) 226 Cal.App.3d 669, 681.) Its failure to do so mandates reversal because it cannot be said that the court would have, or even permissibly could have, imposed an upper term sentence based on appellant's admissions.

Furthermore, in evaluating the prejudicial effect of the error, it is not enough that there was a single valid aggravating factor. (Compare with *People v. Steele* (2000) 83 Cal.App.4th 212, 226.) Because the court is required to balance both aggravating and mitigating circumstances (Cal. Rules of Court, rule 4.420(b)), the critical question is whether the court's reliance on the improper aggravating factors can be deemed harmless beyond a reasonable doubt, particularly considering the fact that one of the prison priors resulted from a conviction that occurred 15 years before the present offense was committed.

**E. Appellant Did Not Forfeit His Sentencing Error Claim By Failing to Raise It in the Trial Court.**

Appellant did not challenge the trial court's decision to impose the upper term sentence at the time of sentencing. However, his failure to do so should not be deemed a forfeiture of the claim. At the time of sentencing, the trial court was required to follow California Supreme Court precedent set forth in *People v. Black* (2005) 35 Cal.4th 1238, overruled by *Cunningham v. California*, *supra*, 126 S.Ct. 856, 2007 U.S. LEXIS 1324, *44. *Black* held that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence . . . under California law does not implicate a defendant's Sixth

Amendment right to a jury trial." (*People v. Black, supra*, 35 Cal.4th at p. 1244.) Thus, any attempt to argue the trial court lacked authority to impose the upper term sentence pursuant to the rationale set forth in *Apprendi* and *Blakely* would have been futile at the time. (See, e.g., *People v. Birks* (1998) 19 Cal.4th 108, 116, fn. 6 [no waiver where lower court was bound by higher court on issue].)

Furthermore, because *Cunningham* was decided after appellant was sentenced and because the issue involves fundamental constitutional rights, this Court has discretion to consider the issue despite appellant's failure to raise it in the trial court. It is settled that appellate courts have discretion to consider constitutional issues raised for the first time on appeal "especially when the enforcement of a penal statute is involved [citation], the asserted error fundamentally affects the validity of the judgment [citation], or important issues of public policy are at issue [citation]." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 394.) Each of these factors is relevant in this case. Consequently, the Court should exercise its discretion to resolve the merits of appellant's sentencing claims.

## IV

## THE TRIAL COURT IMPOSED AN UNAUTHORIZED SENTENCE WHEN IT ENHANCED APPELLANT'S SENTENCE TWICE BASED UPON THE SAME UNDERLYING PRIOR PRISON TERM FOR CASE NO. SCD-174628.

### A. Factual Overview.

The amended information alleged appellant had served two separate prison terms within the meaning of Penal Code section 667.5, subdivision (b) and had failed to remain free of custody for five years after being released from prison in those cases. (CT at p. 34.) The prior prison term allegations arose from two different prior convictions.

One prior prison term allegation arose out of appellant's federal conviction on August 6, 1990 for possession of a controlled substance with intent to distribute. (CT at p. 34; 5 RT at p. 342.) Jurisdiction in that case terminated in June 2002. (CT at p. 147.)

The other prior prison term allegation arose out of appellant's convictions in superior court case no. SCD-174628 in February 26, 2004 for violating Penal Code section 245, subdivision (a)(1) and Health and Safety Code section 11351. (CT at p. 34.) The probation officer's report showed that in 2004, appellant pleaded guilty in exchange for a two-year sentence. (CT at p. 148.) He was paroled in December 2004, and his parole was revoked after he was arrested for the present offenses. (CT at pp. 148, 150, 154.)

Appellant admitted the two alleged prison priors. (5 RT at p. 341; CT at p 34.) At sentencing, the trial court did not impose a one-year enhancement for the prison prior associated with appellant's 1990 conviction. Neither did it strike the enhancement. Rather, the court imposed two consecutive one-year sentence enhancements based solely on the prior state conviction. Specifically, the court stated: "One year for the prison prior in SCD-174628. [¶] Additional one year for the second prison prior in SCD-174628." (6 RT at pp. 464-465.)

This was error insofar as the prior term of imprisonment arising out of case number SCD-174628 qualified only as one prison prior, not two. The court further erred by failing to either impose or strike the enhancement associated with the federal prison prior.

**B. The Trial Court Was Only Authorized to Impose a Single Prior Prison Term Enhancement Based on Case No. SCD-174628.**

Penal Code section 667.5, subdivision (g) provides that "[a] prior separate prison term for the purposes of this section shall mean a continuous completed period of prison incarceration imposed for the particular offense alone

or in combination with concurrent or consecutive sentences for other crimes, including any reimprisonment on revocation of parole which is not accompanied by a new commitment to prison, and including any reimprisonment after an escape from incarceration."

The foregoing provision is intended to "prevent imposition of *two* enhancements when reimprisonment follows a parole violation. Thus *one* enhancement is proper where the parole violation is also prosecuted as a new offense." (*In re Jessup* (1980) 109 Cal.App.3d 161, 164.) As explained in *People v. Espinoza* (1979) 99 Cal.App.3d 59, the purpose behind subdivision (g) of Penal Code section 667.5 was "to prevent any possibility of an overzealous prosecutor or an unperceptive judge attempting to treat the service of a single sentence to state prison interrupted by a period on parole as two prior separate prison terms, giving rise to two one-year enhancements." (*People v. Espinoza, supra,* 99 Cal.App.3d at p. 71.)

Here, there was no evidence to show appellant served two separate prison terms in conjunction with his guilty plea and conviction in case no. SCD-174628. The fact appellant's parole had been revoked in case no. SCD-174628 as the result of the present offenses did not qualify his recommitment in that case as yet another prior prison term. To the contrary, the Supreme Court has held that "if the defendant has violated his parole and has been sent back to prison, but has not received a new commitment, that block of time is deemed to be continuing. If defendant has been returned with the addition of a new commitment, however, the time block is not continued, and only that portion of prison time spent prior to release on parole constitutes the prior separate prison term." (*People v. Kelly* (1983) 33 Cal.3d 267, 270-271, disapproved on another ground in *People v. Langston* (2004) 33 Cal.4th 1237, 1245-1246.)

The record shows appellant had been on parole in case no. SCD-174628 when he committed the present offenses, and his parole was revoked

solely due to the new offenses. (CT at pp. 148, 150, 154.) The sentence imposed as the result of his parole revocation, whether deemed as a continuance of his prior prison term or not, can not be counted as a separate prior prison term within the meaning of Penal Code section 667.5, subdivision (b).

Furthermore, an enhancement not properly proven or admitted must be stricken. (*People v. Lopez* (1983) 163 Cal.App.3d 946, 951.) Although appellant admitted serving a separate prison term in case no. SCD-174628, he was not asked to, nor did he, admit serving a separate term based on his parole revocation. Absent any admission to such a separate term, the enhancement must be stricken.

The court committed further error by failing to either impose or strike the enhancement associated with appellant's admission to the prior prison term allegation connected to his 1990 federal conviction. (*People v. Cattaneo* (1990) 217 Cal.App.3d 1577, 1589.) It is not clear from the record whether the court decided not to impose the enhancement due its age. If that was its intent, the enhancement should have been stricken in the interests of justice pursuant to Penal Code section 1385.

Appellant's failure to raise these issues at sentencing does not constitute a waiver insofar as "[a] claim that a sentence is unauthorized . . . may be raised for the first time on appeal, and is subject to judicial correction whenever the error comes to the attention of the reviewing court. [Citations.]" (*People v. Dotson* (1997) 16 Cal.4th 547, 554; see also *People v. Scott, supra*, 9 Cal.4th at p. 354 [court error in imposing an unauthorized sentence may be raised at any time].)

Accordingly, the second one-year enhancement imposed as a prior prison term under case no. SCD-174628 must be stricken both because it is an unauthorized sentence and for lack of evidence. The case should be remanded to permit the trial court to consider striking, rather than imposing, the prior prison term allegation arising from appellant's 1990 conviction.

## CONCLUSION

For the foregoing reasons, appellant's conviction must be reversed, and, in the alternative, his sentence should be vacated and the matter remanded for resentencing.

March 13, 2007

Respectfully submitted,

Patricia L. Brisbois
State Bar No. 167180
Attorney for Appellant David Lee Henly

## CERTIFICATION OF WORD COUNT

I, Patricia L. Brisbois, hereby certify that, according to the computer program used to prepare this document, APPELLANT'S OPENING BRIEF, contains 11,222 words.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 13th day of March 2007, in Tualatin, Oregon.

Patricia L. Brisbois

# DECLARATION OF SERVICE

Case Name: People v. Henly                    No. D049072

I, Patricia L. Brisbois, declare:

I am an active member of the State Bar of California and am not a party to the above-entitled action. My business address is P.O. Box 518, Tualatin, Oregon 97062.

I served the attached: APPELLANT'S OPENING BRIEF

of which a true and correct copy of the document filed in the cause is affixed, by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

Attorney General
110 West "A" St., Ste. 1100
P.O. Box 85266
San Diego, CA 92101

Appellate Defenders, Inc.
555 West Beech St., Ste. 300
San Diego, CA 92101

David Lee Henly #V24196
306-40
P.O. Box 3535
Norco, CA 92860-0991

Superior Court of San Diego
Hon. Robert F. O'Neill, Judge
P.O. Box120128
San Diego, CA 92101

San Diego District Attorney
Deana Bohenek
Hall of Justice
330 West Broadway, Ste. 1100
San Diego, CA 92101

Thomas J. Ochs
Law Offices of Thomas John Ochs
P.O. Box 7074
San Diego, CA 92107

Each envelope was then sealed and with the postage thereon fully prepaid deposited in the United States mail by me at Tualatin, Oregon on March 13, 2007.

I declare under penalty of perjury that the foregoing is true and correct, and this declaration was executed at Tualatin, Oregon, on March 13, 2007.

PATRICIA L. BRISBOIS
(Typed Name)

[signature]
(Signature)

Exhibit "B"

SUPREME COURT NO.

**IN THE SUPREME COURT OF THE STATE OF CALIFORNIA**

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br>Plaintiff and Respondent,<br><br>vs.<br><br>DAVID LEE HENLY,<br>Defendant and Appellant. | Court of Appeal<br>No. D049072<br><br>Superior Court<br>No. SCD195421 |

**APPEAL FROM THE SUPERIOR COURT OF SAN DIEGO COUNTY**

Honorable Robert F. O'Neill, Judge

**PETITION FOR REVIEW**

Patricia L. Brisbois
State Bar No. 167180
P.O. Box 518
Tualatin, OR 97062
(503) 680-8683
By appointment of the Court of Appeal
under the Appellate Defender's Inc.
assisted case system for Appellant

# TOPICAL INDEX

PAGE

PETITION FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

NECESSITY OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I THE "PRIOR CONVICTION" EXCEPTION ESTABLISHED IN *ALMENDAREZ-TORRES*, RECOGNIZED IN *APPRENDI*, AND LIMITED BY THE HOLDING IN *SHEPARD* PRECLUDES A TRIAL COURT FROM RELYING SOLELY ON A RECITATION OF A DEFENDANT'S CRIMINAL HISTORY IN THE PROBATION REPORT TO IMPOSE AN UPPER TERM SENTENCE AND INSTEAD REQUIRES INDEPENDENT PROOF TO ESTABLISH THE TRUTH OF MATTERS ASSERTED IN THE PROBATION REPORT. . . . . . . . . . . . 6

II THE ABSENCE OF A SIXTH AMENDMENT RIGHT TO A JURY TRIAL IN JUVENILE DELINQUENCY PROCEEDINGS PRECLUDES THE USE OF JUVENILE ADJUDICATIONS TO SUPPORT THE IMPOSITION OF AN UPPER TERM SENTENCE IN AN ADULT CRIMINAL PROCEEDING INSOFAR AS THE DETERMINATION OF THE FACT OF THE JUVENILE ADJUDICATION, WHILE EXPOSING A DEFENDANT TO A GREATER POTENTIAL SENTENCE, HAS NOT BEEN DETERMINED TRUE BEYOND A REASONABLE DOUBT BY A JURY AS REQUIRED BY *APPRENDI* AND *CUNNINGHAM v. CALIFORNIA* (2007) 549 U.S. ___ [127 S.Ct. 856, 166 L.Ed.2d 856] . . . 9

## TOPICAL INDEX (Continued)

PAGE

III THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL AND ABUSED ITS DISCRETION BY ADMITTING UNDULY PREJUDICIAL EVIDENCE OF APPELLANT'S PRIOR ACTS OF FLEEING FROM LAW ENFORCEMENT TO SHOW INTENT AND MOTIVE TO EVADE THE POLICE INSOFAR AS THE ONLY CONTESTED ISSUE IN THE CASE WAS APPELLANT'S IDENTITY AS THE DRIVER. . . . . . . . . . . . . . . 11

IV THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WHEN IT LIMITED DEFENSE COUNSEL'S IMPEACHMENT OF OFFICER CASTRO'S CREDIBILITY TO EXCLUDE THE FACT THE OFFICER WAS TERMINATED FOR LYING THEREBY ALLOWING THE OFFICER TO TESTIFY UNDER A FALSE AURA OF VERACITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATION OF WORD COUNT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

PAGE(S)

## CASES

*Almendarez-Torres v. United States* (1998) 523 U.S. 224
[118 S.Ct. 1219, 140 L.Ed.2d 350] . . . . . . . . . . . . . . . . .2, 6-7

*Apprendi v. New Jersey* (2000) 530 U.S.466
[120 S.Ct 2348, 147 L.Ed.2d 435] . . . . . . . . . . . . 2, 4, 6, 8-10

*Blakely v. Washington* (2004) 542 U.S. 296
[124 S.Ct. 2531, 159 L.Ed.2d 403] . . . . . . . . . . . . . . . . . . 6, 10

*Cunningham v. California* (2007) 549 U.S. ___
[127 S.Ct. 856, 2007 LEXIS 1324] . . . . . . . . . . . . . . . 3, 9-10

*Delaware v. Van Arsdall* (1986) 475 U.S. 673
[106 S.Ct. 1431, 89 L.Ed.2d 674] . . . . . . . . . . . . . . . . . . 14-15

*Jones v. United States* (1999) 526 U.S. 227
[119 S.Ct. 1215, 143 L.Ed.2d 311] . . . . . . . . . . . . . . . . . . 7-8

*McKeiver v. Pennsylvania* (1971) 403 U.S. 538
[91 S.Ct. 1976, 29 L.Ed.2d 647] . . . . . . . . . . . . . . . . . . . . . . 9

*O'Sullivan v. Boerckel* (1999) 526 U.S. 838, 8440845
[119 S.Ct. 1728, 144 L.Ed.2d 1] . . . . . . . . . . . . . . . . . . . . 4-5

*People v. Albarran* (2007) 149 Cal.App.4th 214 . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Anderson* (2001) 25 Cal.4th 543. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Black* (2007) 41 Cal.4th 799 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6 , 11

*People v. Bowden* (2002) 102 Cal.App.4th 387 . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Ewoldt* (1994) 7 Cal.4th 380 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People v. Grayson*, review granted December 19, 2007, S157952 . . . . . . . . . . . . 4

*People v. Harris* (2005) 37 Cal.4th 310 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*People v. Lee* (2003) 111 Cal.App.4th 1310 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. McGee* (2006) 38 Cal.4th 682 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## TABLE OF AUTHORITIES (Continued)

PAGE(S)

**CASES (Continued)**

*People v. Nguyen*, review granted October 10, 2007, S154847 . . . . . . . . . . . . . . 4

*People v. Palmer* (2006) 142 Cal.App.4th 724 . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*People v. Partida* (2005) 37 Cal.4th 428 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People v. Quartermain* (1997) 16 Cal.4th 600 . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*People v. Superior Court (Andrades)* (2003) 113 Cal.App.4th 817 . . . . . . . . . . . 11

*People v. Superior Court (Carl W.)* (1975) 15 Cal.3d 271 . . . . . . . . . . . . . . . . . . . . 9

*People v. Towne*, review granted July 14, 2004, S125677 . . . . . . . . . . . . . . . . . . . 4

*People v. Tu*, review granted December 12, 2007, S156995 . . . . . . . . . . . . . . . . . 4

*Shepard v. United States* (2005) 544 U.S. 13
[125 S.Ct. 1254, 161 L.Ed.2d 205] . . . . . . . . . . . . . . . . . . 2, 8

*U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187 . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

**CONSTITUTION**

U.S. Const., 6th Amend. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3, 6, 9-11, 14-16

U.S. Const., 14th Amend. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-12

**STATUTES**

Evidence Code

section 352. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

section 1101, subdivision (b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

Penal Code

section 969b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Vehicle Code

section 2800.2, subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 12

section 14601.2, subdivision (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## TABLE OF AUTHORITIES (Continued)

PAGE(S)

### CALIFORNIA RULES OF COURT

Rule 4.421(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 8.500(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUPREME COURT NO.

**IN THE SUPREME COURT OF THE STATE OF CALIFORNIA**

THE PEOPLE OF THE STATE OF CALIFORNIA,
Plaintiff and Respondent,

vs.

DAVID LEE HENLY,
Defendant and Appellant.

Court of Appeal
No. D049072

Superior Court
No. SCD195421

**APPEAL FROM THE SUPERIOR COURT OF SAN DIEGO COUNTY**

Honorable Robert F. O'Neill, Judge

**PETITION FOR REVIEW**

TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

DAVID LEE HENLY, defendant and appellant, respectfully petitions for review of the unpublished decision of the Court of Appeal, Fourth Appellate District, Division One, filed on December 10, 2007, affirming the judgment of appellant's conviction and sentence. A copy of the Court of Appeal's opinion is attached to this petition as Exhibit "A."

## ISSUES PRESENTED FOR REVIEW

1. **DOES THE "PRIOR CONVICTION" EXCEPTION ESTABLISHED IN *ALMENDAREZ-TORRES v. UNITED STATES* (1998) 523 U.S. 224 [118 S.Ct. 1219, 140 l.Ed.2d 350] AND RECOGNIZED IN *APPRENDI v. NEW JERSEY* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435], AS LIMITED BY THE HOLDING IN *SHEPARD v. UNITED STATES* (2005) 544 U.S. 13 [125 S.Ct. 1254, 161 L.Ed.2d 205], PRECLUDE A TRIAL COURT FROM RELYING SOLELY ON A RECITATION OF A DEFENDANT'S CRIMINAL HISTORY IN THE PROBATION REPORT TO IMPOSE AN UPPER TERM SENTENCE AND INSTEAD REQUIRE ACTUAL PROOF, I.E., COURT DOCUMENTS OR OTHER RELIABLE EVIDENCE, TO ESTABLISH THE EXISTENCE OF SUCH CRIMINAL HISTORY PARTICULARLY WHERE IT IS ASSERTED THE DEFENDANT PERFORMED POORLY ON PROBATION OR PAROLE?**

2. **DOES THE ABSENCE OF A SIXTH AMENDMENT RIGHT TO A JURY TRIAL IN JUVENILE DELINQUENCY PROCEEDINGS PRECLUDE THE USE OF JUVENILE ADJUDICATIONS TO SUPPORT THE IMPOSITION OF AN UPPER TERM SENTENCE IN AN ADULT CRIMINAL PROCEEDING INSOFAR AS THE DETERMINATION OF THE FACT OF THE JUVENILE ADJUDICATION EXPOSES A DEFFENDANT TO A GREATER POTENTIAL SENTENCE BUT HAS NOT BEEN DETERMINED BEYOND A REASONABLE DOUBT BY A JURY AS REQUIRED BY *APPRENDI v. NEW JERSEY* (2000) 530 U.S. 466 [120 S.Ct. 2348,**

**147 L.Ed.2d 435] AND *CUNNINGHAM v. CALIFORNIA* (2007) 549 U.S. ___ [127 S.Ct. 856, 166 L.Ed.2d 856]?**

**3. DOES A TRIAL COURT VIOLATE A DEFENDANT'S FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL AND ABUSE ITS DISCRETION UNDER EVIDENCE CODE SECTIONS 352 AND 1101, SUBDIVISION (B) WHEN IT ADMITS UNDULY PREJUDICIAL EVIDENCE TO SHOW INTENT AND MOTIVE WHEN THE ONLY CONTESTED ISSUE IN THE CASE IS THE IDENTITY OF THE PERSON WHO COMMITTED THE CRIME?**

**4. DOES IT VIOLATE A DEFENDANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WHEN THE TRIAL COURT LIMITS IMPEACHMENT EVIDENCE TO EXCLUDE THE UNDISPUTED FACT THAT A POLICE OFFICER WAS TERMINATED FOR LYING BY ALLOWING THE OFFICER TO TESTIFY UNDER A FALSE AURA OF VERACITY?**

## NECESSITY OF REVIEW

Review of the first two issues presented is necessary to secure uniformity of decision and to settle important questions of law pursuant to California Rules of Court, rule 8.500(b)(1).

In this case, the jury convicted appellant of evading an officer with reckless driving and driving with a suspended license. At sentencing, the trial court imposed the upper term of three years for the felony evading count (doubled to six years based on a prior strike conviction) based on matters relating to appellant's criminal history that were contained solely in the probation report, including appellant's history of his performance on probation and parole and his history of juvenile adjudications, that were neither admitted by appellant nor found by the jury to be true beyond a reasonable doubt in the present case.

Review of the first argument presented is necessary to determine whether the "prior conviction" exception in *Apprendi v. New Jersey, supra*, 530 U.S. 466 requires that a defendant's criminal history, as recited in a probation report, be supported by court documents or other reliable and trustworthy evidence that were part of the record of the prior conviction(s) before being relied upon as a factor in aggravation to support an upper-term sentence. Review of the second argument presented is necessary to determine whether a prior juvenile adjudication falls outside of the "prior conviction" exception because juveniles are not afforded the Sixth Amendment right to a jury trial in juvenile proceedings.

Cases relating to these issues are presently pending before this Court in *People v. Towne*, review granted July 14, 2004, S125677; *People v. Nguyen,* review granted October 10, 2007, S154847; *People v. Tu*, review granted December 12, 2007, S156995; and *People v. Grayson*, review granted December 19, 2007, S157952.

Appellant's third and fourth arguments are included in the petition purely to exhaust state remedies for purposes of federal habeas corpus review. (*O'Sullivan*

*v. Boerckel* (1999) 526 U.S. 838, 844-845 [119 S.Ct. 1728, 144 L.Ed.2d 1] [28 U.S.C. § 2254(c) requires state prisoners to give state courts a fair opportunity to act on their claims by invoking one complete round of the state's appellate review process].)

## STATEMENT OF CASE

Appellant David Lee Henly was convicted of evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a)) and driving with a suspended license (Veh. Code, § 14601.2, subd. (a)). (Clerk's Transcript (CT) at pp. 134-135, 184.) Appellant waived his right to a jury trial on the prior conviction and prison term allegations, and, in a bifurcated proceeding, admitted the priors. (CT at pp. 183, 185; Vol. 5 Reporter's Transcript (5 RT) at pp. 339-342.)

At sentencing, the trial court imposed the upper term of three years for the felony evading count, which it then doubled to six years based upon the prior strike conviction. (CT at p. 187; Vol. 6 Reporter's Transcript (6 RT) at p. 464.) In addition, the court imposed two one-year sentences under Penal Code section 667.5, subdivision (b), resulting in an aggregated term of eight years. (CT at p. 187; 6 RT at pp. 464-465.)

On December 10, 2007, in an unpublished opinion, the Court of Appeal affirmed the judgment. (Exh. A.) This timely petition for review follows.

## STATEMENT OF FACTS

Appellant adopts the Factual and Procedural Background in the opinion below, Exhibit A, hereto, pages 2-3.

## ARGUMENT

## I

## THE "PRIOR CONVICTION" EXCEPTION ESTABLISHED IN *ALMENDAREZ-TORRES*, RECOGNIZED IN *APPRENDI*, AND LIMITED BY THE HOLDING IN *SHEPARD* PRECLUDES A TRIAL COURT FROM RELYING SOLELY ON A RECITATION OF A DEFENDANT'S CRIMINAL HISTORY IN THE PROBATION REPORT TO IMPOSE AN UPPER TERM SENTENCE AND INSTEAD REQUIRES INDEPENDENT PROOF TO ESTABLISH THE TRUTH OF MATTERS ASSERTED IN THE PROBATION REPORT.

While acknowledging that the reasoning of *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [118 S.Ct. 1219, 140 L.Ed.2d 350] is in some aspects inconsistent with the United States Supreme Court's later reasoning in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [120 S.Ct. 2348, 147 L.Ed.2d 435] and *Blakely v. Washington* (2004) 542 U.S. 296 [124 S.Ct. 2531, 159 L.Ed.2d 403], this court in *People v. Black* (2007) 41 Cal.4th 799 (*Black II*) "decline[d] to speculate that the high court will change its position on th[e] issue" of whether recidivism factors involve factual findings falling within the scope of the Sixth Amendment right to a jury trial. (*Black II, supra,* 41 Cal.4th at p. 819, fn. 8.) Instead, the *Black II* court relied on the statement repeated in each of the pivotal cases that "the federal right to a jury trial does not extend to the fact of a prior conviction . . . ." (*Ibid.*) But, as seen by the *Black II* court's reliance on *People v. McGee* (2006) 38 Cal.4th 682, it has failed to take into account that in *McGee* the trial court's findings in regard to the defendant's prior Nevada convictions were made after reviewing transcripts from the prior case. (See *People v. McGee, supra,* 38 Cal.4th at p. 708, fn. 10.)

The problem unresolved by the court's reasoning in *Black II* is that it fails to distinguish between cases where the fact of a prior conviction has been *admitted or otherwise proven by written evidence* from cases involving the type of hearsay

presented in appellant's case by virtue of the probation officer's report listing the various past juvenile and adult offenses committed by appellant. Here, in explaining its reasons for selecting the upper term, the trial court relied exclusively on the information supplied in the probation officer's report describing appellant's juvenile and adult criminal history.

The aggravating factors found by the trial court to support its decision to impose the upper term sentence were related to appellant's recidivism. These factors included appellant's juvenile offense history and his poor performance on probation and parole. (CT at p. 153; 6 RT at pp. 458-463.) In addition, beyond appellant's admission of the prior strike conviction and two prison priors, the court considered appellant's adult convictions based solely on information supplied in the probation officer's report. In so doing, the trial court exceeded the scope of the prior conviction exception first established in *Almendarez-Torres v. United States, supra*, 523 U.S. 224.

In *Almendarez-Torres*, the Supreme Court, in interpreting 18 U.S.C. § 1326, held that the defendant's recidivism did not constitute an element of the charged offense and, therefore, his sentence for the offense was properly enhanced based on his prior conviction even though the prior conviction had not been charged in the indictment. (*Almendarez-Torres v. United States, supra,* 523 U.S. at p. 226.) The next term, in *Jones v. United States* (1999) 526 U.S. 227 [119 S.Ct. 1215, 143 L.Ed.2d 311], the Supreme Court distinguished its holding in *Almendarez-Torres* from the facts at hand, explaining: "The Court's repeated emphasis on the distinctive significance of recidivism leaves no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing. . . . One basis for the possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, . . . a prior conviction must itself have been established through procedures satisfying

the fair notice, reasonable doubt, and jury trial guarantees." (*Jones v. United States, supra,* 526 U.S. at p. 249.)

Thereafter, the Court decided *Apprendi* and, after a lengthy discussion of *Almendarez-Torres* and *Jones*, held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi v. New Jersey, supra,* 530 U.S. at p. 490.)

But in *Shepard v. United States, supra*, 544 U.S. 13, the Supreme Court expressly limited its holding in *Almendarez-Torres*. At issue in *Shepard* was the sort of information the sentencing court could look at in order to determine whether the defendant's prior state convictions for burglary constituted violent felonies under federal law and thus subjected the defendant to an enhanced sentence. The Court determined "the character of an admitted burglary is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." (*Shepard v. United States, supra,* 544 U.S. at p. 16.) Consequently, even though the factual dispute in *Shepard* involved a prior conviction, the Court concluded that *Almendarez-Torres* did not authorize sentencing courts to resolve such disputes by relying on documents that were not part of the record of the prior conviction because such reliance "was too much like the findings subject to *Jones* and *Apprendi* . . . ." (*Shepard v. United States, supra,* 544 U.S. at p. 25.)

*Shepard* makes it clear that a sentencing court cannot adopt wholesale the information supplied in a probation officer's report to make factual findings in aggravation relating to a defendant's recidivism. Rather, *Shepard* indicates a sentencing court's factual findings must be supported by proof similar to that required to establish the truth of a prior conviction for statutory enhancement purposes. (See, e.g., Pen. Code, § 969b.)

Consequently, review should be granted because this court has yet to confront head-on the trial court's ability to make factual findings relating to a defendant's criminal history based solely on the hearsay contained in a probation report relating to a defendant's convictions and performance on probation and parole where such "evidence" extends far beyond the limit established for the prior conviction exception to the Sixth Amendment requirement that any fact increasing the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.

## II

## THE ABSENCE OF A SIXTH AMENDMENT RIGHT TO A JURY TRIAL IN JUVENILE DELINQUENCY PROCEEDINGS PRECLUDES THE USE OF JUVENILE ADJUDICATIONS TO SUPPORT THE IMPOSITION OF AN UPPER TERM SENTENCE IN AN ADULT CRIMINAL PROCEEDING INSOFAR AS THE DETERMINATION OF THE FACT OF THE JUVENILE ADJUDICATION, WHILE EXPOSING A DEFFENDANT TO A GREATER POTENTIAL SENTENCE, HAS NOT BEEN DETERMINED TRUE BEYOND A REASONABLE DOUBT BY A JURY AS REQUIRED BY *APPRENDI* AND *CUNNINGHAM v. CALIFORNIA* (2007) 549 U.S. ___ [127 S.Ct. 856, 166 L.Ed.2d 856].

The necessity of limiting the scope of the prior conviction exception to comport with a defendant's Sixth Amendment right to a jury trial is particularly relevant in regard to appellant's juvenile adjudications.

As yet, juvenile offenders do not have a federal or state constitutional right to a jury trial in juvenile delinquency proceedings. (*McKeiver v. Pennsylvania* (1971) 403 U.S. 528, 545 [91 S.Ct. 1976, 29 L.Ed.2d 647]; *People v. Superior Court (Carl W.)* (1975) 15 Cal.3d 271, 224.) Thus, a juvenile adjudication is not a prior conviction with the meaning of *Apprendi* because the juvenile offender does

not have the right to a jury trial. (See *U.S. v. Tighe* (9th Cir. 2001) 266 F.3d 1187, 1194 ["the 'prior conviction' exception does not include nonjury juvenile adjudications"].) Consequently, using a juvenile adjudication to enhance the sentence in an adult criminal case is a constitutionally impermissible use of a nonjury judgment to prove the fact of recidivism under *Apprendi*.

Here, appellant's history of juvenile adjudications was relied upon extensively by the trial court in making its sentencing choice. (6 RT at pp. 459-462; CT at pp. 144-145.) Because appellant was not afforded the right to a jury trial when his juvenile cases were adjudicated, consideration of those offenses for the purpose of imposing an aggravated sentence was unconstitutional.

In *Apprendi v. New Jersey, supra*, 530 U.S 466, the United States Supreme Court held that, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) In a later opinion the Court explained "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." (*Blakely v. Washington* (2004) 542 U.S. 296, 303-304 [124 S.Ct. 2531, 159 L.Ed.2d 403].) In January 2007, the high court firmly pronounced that the middle term sentence under California's determinate sentencing law (DSL) is the maximum sentence a judge may impose based on the facts reflected in the jury's verdict or otherwise admitted by the defendant. (*Cunningham v. California, supra,* 127 S.Ct. at p. 868.)

In *United States v. Tighe* (9th Cir. 2001) 266 F.3d 1187, the court concluded the use of a prior juvenile adjudication violated the defendant's rights under the Sixth and Fourteenth Amendments because the prior adjudication was not decided by a jury. Relying on *Apprendi*, the *Tighe* court held the trial court could not use a prior nonjury juvenile adjudication to increase the penalty beyond that authorized for the current offense alone. (*United States v. Tighe*, supra, 266

F.3d at pp. 1194-1195.) Several state appellate courts have rejected *Tighe*. (See *People v. Palmer* (2006) 142 Cal.App.4th 724, 733; *People v. Superior Court (Andrades)* (2003) 113 Cal.App.4th 817, 833-834; *People v. Lee* (2003) 111 Cal.App.4th 1310, 1315-1316; *People v. Bowden* (2002) 102 Cal.App.4th 387, 393-394.)

In *Black II*, this court concluded the defendant's upper-term sentence was supported by an aggravating factor relating to the defendant's criminal history under rule 4.421(b)(2), which provides "that it is an aggravating circumstance that 'defendant's prior convictions . . . are numerous or of increasing seriousness.'" (*People v. Black, supra,* 41 Cal.4th at pp. 818-820.) But this court has not yet determined whether juvenile adjudications may be considered as part of a defendant's criminal history without violating a defendant's Sixth Amendment right to a jury determination beyond a reasonable doubt of any fact necessary to increase the penalty for a crime beyond the prescribed statutory maximum. Therefore, review should be granted in this case to determine this issue.

## III

## THE TRIAL COURT VIOLATED APPELLANT'S FEDERAL DUE PROCESS RIGHT TO A FAIR TRIAL AND ABUSED ITS DISCRETION BY ADMITTING UNDULY PREJUDICIAL EVIDENCE OF APPELLANT'S PRIOR ACTS OF FLEEING FROM LAW ENFORCEMENT TO SHOW INTENT AND MOTIVE TO EVADE THE POLICE INSOFAR AS THE ONLY CONTESTED ISSUE IN THE CASE WAS APPELLANT'S IDENTITY AS THE DRIVER.

Review is necessary in this case to determine whether a trial court violates a defendant's due process right to a fair trial under the Fourteenth Amendment of the federal Constitution and abuses its discretion by admitting evidence pursuant to Evidence Code section 1101, subdivision (b) of prior bad acts to show intent

and motive when the only contested issue at trial is the identity of the person who committed the charged offense.

This court has acknowledged that "the admission of evidence, even if error under state law, violates due process . . . if it makes the trial fundamentally unfair. [Citation.]" (*People v. Partida* (2005) 37 Cal.4th 428, 436.) Appellant contends his due process right to a fair trial under Fourteenth Amendment of the federal Constitution was violated because the trial court admitted evidence of two prior incidents when appellant fled from the police to avoid arrest to show his intent and motive to commit the charged offense of felony evading (Veh. Code, § 2800.2, subd. (a)).

The sole issue at trial was the identity of the driver in the fleeing vehicle. Consequently, the issues of intent and motive were wholly irrelevant, particularly since these factors were not disputed and could not reasonably be disputed in light of the evidence of the driver's conduct. Furthermore, the prior act evidence in this case was extremely inflammatory considering the facts related to the jurors of the circumstances surrounding appellant's evasion of the police in 1990 and 2003. In brief, substantially prejudicial evidence relating to the incident in 1990 indicated appellant had been attempting to sell an illegal substance to a DEA special agent and that the car he had been driving, like the Saab being driven in the present case, was registered to someone other than appellant. (Vol. 4 Reporter's Transcript (4 RT) at pp. 223-225, 232-234.) Highly inflammatory and prejudicial evidence relating to the incident in 2003 indicated that police were contacted because appellant had been involved in a fight with a weapon with another person. (Vol. 3 Reporter's Transcript (3 RT) at pp. 183, 188; 4 RT at p. 211.) Moreover, appellant fled on foot in 2003. Consequently, even if it was not so highly prejudicial, the prior act in 2003 is simply too dissimilar to be considered relevant in the context on the present case.

Here, there was a real danger the jurors would improperly infer that appellant was the driver of the Saab briefly pursued by the police in this case based on his prior conduct in 1990 and 2003 and that, because he previously had engaged in other criminal acts more reprehensible than the charged offense, he was a danger to society and should be punished. In short, admission of the prior acts evidence was so inflammatory and prejudicial "it could only have served to cloud [the jurors'] resolution of the issues" and thereby violated appellant's federal due process right to a fair trial. (*People v. Albarran* (2007) 149 Cal.App.4th 214, 230-232 [holding that admission of "extremely and uniquely inflammatory" prejudicial gang evidence to prove motive and intent prevented the defendant from receiving a fair trial].)

In *People v. Ewoldt* (1994) 7 Cal.4th 380, this court made it clear that when identity is the only contested issue at trial and prior act evidence is admitted to show intent, such evidence is merely cumulative and should be excluded as more prejudicial than probative. In *Ewoldt,* the court reasoned that it was error to admit the prior act evidence to the extent the prior acts of sexual abuse in that case had been offered to prove the defendant's intent to commit the charged crime which he had denied committing. There, the evidence was such that, if the jury found the defendant engaged in the lewd acts testified to by the victim, "his intent in doing so could not reasonably be disputed. [Citations.]" (*People v. Ewoldt, supra,* 7 Cal.4th at p. 406.) Consequently, the court concluded "the prejudicial effect of admitting evidence of similar uncharged acts . . . would outweigh the probative value of such evidence *to prove intent*."[1] (*Ibid.*) Appellant contends this principal applies in his case.

---

[1] Although the *Ewoldt* court concluded the trial court erred in admitting the prior act evidence to show intent, it essentially deemed the error harmless because it also had been admitted for other proper purposes. (*People v. Ewoldt, supra,* Cal.4th at pp. 406-407.)

Accordingly, the petition should be granted to determine whether the erroneous admission of the prior acts evidence violated state law as well as appellant's federal due process right to a fair trial.

## IV

## THE TRIAL COURT VIOLATED APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT THE WITNESSES AGAINST HIM WHEN IT LIMITED DEFENSE COUNSEL'S IMPEACHMENT OF OFFICER CASTRO'S CREDIBILITY TO EXCLUDE THE FACT THE OFFICER WAS TERMINATED FOR LYING THEREBY ALLOWING THE OFFICER TO TESTIFY UNDER A FALSE AURA OF VERACITY.

Review should be granted to determine whether the trial court's ruling limiting defense counsel's impeachment of Officer Castro violated appellant's Sixth Amendment right to confront the witnesses against him. Although Castro had been terminated from his job as a police officer for lying, the trial court ruled that defense counsel could not question Castro about the reason behind his termination. This ruling allowed the officer to testify under a false aura of veracity and precluded the jurors from hearing highly relevant evidence relating to the officer's credibility.

"The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.' The right of confrontation . . . 'means more than being allowed to confront the witness physically.' [Citation.] Indeed, '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity for cross-examination.*' [Citation.]" (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 678 [106 S.Ct. 1431, 89 L.Ed.2d 674].) "In determining the credibility of a witness, the jury may consider any matter that has a tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to: a

witness's character for honesty or veracity or their opposites; the existence or nonexistence of a bias, interest, or other motive; his attitude toward the action in which he testifies or toward the giving of testimony; and his admission of untruthfulness. [Citation.]" (*People v. Harris* (2005) 37 Cal.4th 310, 337.)

A trial court's limitation on cross-examination relating to the credibility of a witness violates the Confrontation Clause of the Sixth Amendment if "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense] counsel been permitted to pursue his proposed line of questioning." (*Delaware v. Van Arsdall, supra,* 475 U.S. at p. 680; see also *People v. Anderson* (2001) 25 Cal.4th 543, 608; *People v. Quartermain* (1997) 16 Cal.4th 600, 623-624.) As explained in *Van Arsdall*, "the focus of the prejudice inquiry in determining whether the confrontation right has been violated must be on the particular witness, not on the outcome of the entire trial." (*Delaware v. Van Arsdall, supra,* 475 U.S. at p. 680.)

The prosecutor told the trial court she was not opposed to letting the jury hear that Castro had been fired for lying, she just did not want to get into the dispute underlying his termination, which Castro was challenging at the time of appellant's trial. (Vol. 1 Reporter's Transcript (1 RT) at p. 56.) In an egregious demonstration of bias, the trial court then asked when the officer had been "unfairly terminated." (1 RT at p. 57.) The fact that Castro had been terminated for lying was not subject to dispute, although it is evident Castro was contesting his superior's conclusion that he had lied by appealing his termination. Thus, the trial court should have permitted the jurors to hear about the simple fact that Castro had been fired for lying so that they could factor this piece of information into their overall assessment of Castro's credibility as a witness. Particularly since Castro gave pivotal testimony identifying appellant as the driver of the Saab (Supplemental Reporter's Transcript at pp. 6, 8, 14) and Officer Marshall only viewed the driver for two or three seconds and otherwise failed to look at a

photograph of the registered owner of the vehicle for comparison (Vol. 2 Reporter's Transcript (2 RT) at pp. 110-111, 118-119, 135-136; 4 RT at p. 262).

Thus, review should be granted to determine whether the trial court's ruling ran afoul of appellant's Sixth Amendment right confront the witnesses against him by excluding uncontested impeachment evidence relating to Officer Castro's credibility.

## CONCLUSION

For all of the foregoing reasons, appellant David Lee Henly respectfully requests this court to grant his petition for review.

January 18, 2008

Respectfully submitted,

[signature]

Patricia L. Brisbois
Attorney for Appellant/Petitioner
David Lee Henly

## CERTIFICATION OF WORD COUNT

I, Patricia L. Brisbois, hereby certify that, according to the computer program used to prepare this document, this petition contains 4,318 words.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 18th day of January 2008, in Tualatin, Oregon.

Patricia L. Brisbois

Patricia L. Brisbois

# EXHIBIT "A"

***OPINION OF THE COURT OF APPEAL***
***FOURTH APPELLATE DISTRICT, DIVISION ONE***
***FILED ON DECEMBER 10, 2007***

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

Stephen M. Kelly, Clerk

DEC 1 0 2007

Court of Appeal Fourth District

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br>Plaintiff and Respondent,<br>v.<br>DAVID LEE HENLY,<br>Defendant and Appellant. | D049072<br><br>(Super. Ct. No. SCD195421) |

APPEAL from a judgment of the Superior Court of San Diego County, Robert F. O'Neill, Judge. Affirmed as modified.

David Lee Henly appeals a judgment arising out of his conviction of evading an officer with reckless driving and driving with a suspended license. He contends that the trial court erred in admitting unduly prejudicial bad act evidence against him, limiting his impeachment of one of the police officers who testified against him, imposing an upper term sentence and imposing an enhancement twice based on a single prior prison term he served. We conclude that his arguments do not support a reversal of the judgment,

although the judgment erroneously reflects that the court imposed two prison prior enhancements based on a single period of incarceration. Because the record is clear that the court intended to impose the enhancements for two separate incarcerations, we modify the judgment to so provide and affirm the judgment as so modified.

FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of December 3, 2005, Corrine Brown called 911 to report that Henly, her ex-boyfriend, had "beat her up" during an argument while they were driving in his convertible Saab. San Diego Police Officers David Marshall and Mike Alberts responded to the call and found Brown standing next to a silver Saab with a black convertible top. Brown told the officers that Henly had slapped her during an argument and that he stopped the car and walked off with its keys after she threatened to call for help. Brown gave the officers a description of Henly and the clothes he was wearing; she also indicated that both she and Henly had been drinking that night and that although the car belonged to Henly, it was registered to a third party. The officers discovered that the car was registered to John Goodman (who was later determined to be Henly's cousin) and that Henly's driver's license had previously been suspended after he was convicted of driving under the influence.

The officers waited in a nearby parking lot and, about an hour and a half later, they saw the Saab drive by and began to follow it; the driver was wearing clothing consistent with the description Brown had given them. The Saab immediately accelerated and ran a red light at an intersection. The officers turned on their patrol car's lights and sirens and, accompanied by a second patrol car, gave chase; however, shortly after the Saab made an

illegal U-turn (during which two of the officers got "a good view of the driver"), the officers called off the pursuit based on slippery road conditions and public safety concerns. Two of the officers positively identified Henly as the driver of the car after checking his driver's license picture. Henly was subsequently picked up and charged with evading an officer by reckless driving and driving with a suspended driver's license; an amended information against him also alleged that he had suffered a prior strike conviction in 2004 and served two prior prison terms.

At trial, the prosecution introduced evidence of the foregoing. Although Goodman was called as a witness, he invoked his privilege against self-incrimination outside the presence of the jury and thereafter refused to testify. Henly's defense focused on discrediting Brown's statements to the 911 operator and the police, the officers' failure to investigate Goodman as a possible suspect, and the officers' testimony about the incident, including their identifications of him as the driver of the Saab.

The jury convicted Henly of both offenses and, in a bifurcated proceeding, Henly admitted the strike and prison prior enhancement allegations. The court sentenced Henly to the upper term of 3 years, doubled based on the prior strike conviction, on the evading count and 180 days in jail, with credit for time served, on the suspended license count, plus two consecutive 1-year enhancements for the prison priors. The court also imposed certain fines and fees. Henly appeals.

## DISCUSSION

1. *Admission of Prior Bad Act Evidence*

Prior to trial, the prosecution moved in limine to introduce evidence of two prior situations (one in 1990 and one in 2003) in which Henly attempted to evade police to avoid being charged with crimes, arguing that such evidence was admissible to establish he drove the car with the intent and motive of evading the officers. Henly opposed the motion, arguing that because his defense was that he was not involved in the crime at all, neither intent nor motive were seriously at issue, and that the prior situations were not sufficiently similar to the current offense to allow admission of the evidence to establish identity (i.e., that he was the perpetrator). The court ruled that, subject to a limiting instruction, the evidence was admissible.

At trial, after the court instructed the jury that the evidence was to be considered to prove intent and motive, the prosecution introduced evidence that after being stopped in May of 2003 in connection with a fight involving a weapon, Henly attempted to escape from police by going into Goodman's duplex unit and then running to the back yard and jumping over a fence to the neighbor's yard when the police came to the house. The court again gave the limiting instruction, after which the prosecutor questioned a federal agent about an incident in March 1990 in which Henly temporarily avoided being arrested in a buy-bust operation by speeding away from the scene in a car registered to his girlfriend.

Henly contends that the trial court erred in admitting this evidence. We review the trial court's rulings for an abuse of discretion (*People v. Lewis* (2001) 25 Cal.4th 610,

637) and will not reverse an evidentiary ruling unless the appellant demonstrates a manifest abuse of that discretion. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9-10.)

Pursuant to Evidence Code section 1101, subdivision (a), evidence of a person's character or trait of his character is generally inadmissible when offered by an opposing party to prove the person's conduct on a specified occasion. However, notwithstanding this general rule, evidence that a person has committed a prior crime, civil wrong or other act is admissible to prove a fact other than a disposition to commit such an act, such as motive, intent, plan or identity. (Evid. Code, § 1101, subd. (b).)

To be admissible, evidence that satisfies the criteria set forth in Evidence Code section 1101, subdivision (b), must also qualify for admission under Evidence Code section 352. (Evid. Code, § 1108, subd. (a); *Brown v. Smith* (1997) 55 Cal.App.4th 767, 791.) Evidence is admissible under Evidence Code section 352 unless the trial court determines that its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, confusing the issues or misleading the jury.

The probative value of prior act evidence is determined from various considerations, including the frequency of the uncharged acts and their similarity and temporal proximity to the charged acts. (*People v. Soto* ( 1998) 64 Cal.App.4th 966, 989-990.) To be relevant, the other acts must bear a certain degree of similarity to the conduct giving rise to the current charges; the precise degree of similarity that is required depends on the purpose for which the other act evidence is admitted. (*People v. Ewoldt* (1994) 7 Cal.4th 380, 402, superseded by statute on other grounds as stated in *People v.*

*Britt* (2002) 104 Cal.App.4th 500, 505.) To establish intent, for example, the uncharged misconduct must merely be sufficiently similar to support the inference that the defendant "'probably harbor[ed] the same intent in each instance. [Citation.]'" (*People v. Ewoldt, supra*, 7 Cal.4th at p. 402.) A greater degree of similarity is required to establish that the defendant acted in accordance with a common design or plan and the greatest degree of similarity is required to prove identity. (*Id.* at pp. 402-403; see also *People v. Nible* (1988) 200 Cal.App.3d 838, 848 [to be admissible to show identity, prior act must be sufficiently distinctive and similar to the charged crime that a proper inference may be drawn the same person committed both].)

Here, because Henly pleaded not guilty to the charges, all the elements of the charged offenses, including intent, were at issue even though his actual defense was limited to identity. (*People v. Daniels* (1991) 52 Cal. 3d 815, 857-858.) The prosecution offered the prior act evidence, and the court allowed it, for the limited purpose of establishing that Henly drove the Saab with the intent and motive of evading the police. Although the two prior incidents were each factually distinguishable from the present evasion charge (the greatest similarity being the fact that both the 1990 incident and the current offense involved Henly's use of a car to make a high speed get away from the police), the common thread from each of the three situations was that Henly had a strong desire and intent to avoid arrest and was willing to undertake significant additional risk to himself and others in order to retain his liberty. This similarity is sufficient to permit the admission of the prior act evidence under Evidence Code section 1101, subdivision (b), on the issues of intent and motive. (See *People v. Ewoldt, supra*, 7 Cal.4th at p. 394, fn. 2 [explaining that in a

prosecution for shoplifting where it was undisputed that the defendant left the store without paying for the items, the defendant's uncharged similar acts of theft would be admissible to demonstrate that he or she intended to steal the items].)

Henly nonetheless argues that the court should have excluded the prior act evidence under Evidence Code section 352 because the evidence was unduly prejudicial. The prejudice that Evidence Code section 352 is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence, but instead that which results from evidence that has very little effect on the issues but yet tends "to evoke an emotional bias against the defendant as an individual[.]" (*People v. Karis* (1988) 46 Cal.3d 612, 638.)

Pursuant to this standard, the admission of the evidence of the 1990 incident, although damaging to Henly's defense specifically because of its similarity and relevance to the current offense, was not "prejudicial" for purposes of Evidence Code section 352. That Henly was driving a car registered in the name of his girlfriend, although perhaps curious, and was involved in an illegal transaction are simply not of such a nature as to evoke an emotional bias or animus on the part of the jury against him.

Henly also argues, however, that the 2003 evidence was not particularly relevant given the factual differences between that incident and the charged offense and that it was "prejudicial" in the Evidence Code section 352 sense because the officers' testimony suggested to the jury that he had threatened, or perhaps even injured, a third party with a weapon in that incident, something that would tend to evoke an emotional bias against him as a bad guy. Assuming, without deciding, that the 2003 evidence was unduly

prejudicial and that the trial court manifestly abused its discretion in admitting it, its admission was nonetheless harmless in light of the strength of the evidence that Henly was the driver of the Saab (particularly the testimony of Officer Marshall and Brown's statements to the 911 officer and Officer Marshall that the car was Henly's and that the keys were in Henly's possession).

2. *Limiting his Evidence to Impeach Officer Castro*

The prosecution also moved to exclude evidence that Officer Martin Castro, who drove the second patrol car involved in pursuit of the Saab on the night of the incident and was one of the two officers who identified Henly as the driver, was terminated from his job for lying under oath about an unrelated incident in which he claimed that he did not know how his patrol car became damaged. Although the prosecutor indicated her willingness to have the jury hear that Officer Castro was terminated for lying, the court ultimately determined it would admit evidence that Castro had been terminated, but not the additional fact that the termination was for lying because that matter had not been finally adjudicated (Officer Castro's appeal of his termination was then pending) and involved a collateral issue that would require an undue consumption of time. Defense counsel agreed with the trial court's ruling, indicating that all he wanted was to establish that Officer Castro had been involuntarily terminated from his position with the police department.

Henly now contends that the court violated his constitutional right of confrontation by disallowing evidence that Officer Castro had been fired for lying. A criminal defendant establishes a violation of the Confrontation Clause by showing that he was

prohibited from engaging in otherwise appropriate cross-examination designed to show bias on the part of the witness and thereby "to expose to the jury the facts from which jurors could appropriately draw inferences relating to the reliability of the witness." (*People v. Frye* (1998) 18 Cal.4th 894, 946.) However, the trial court retains wide latitude in restricting cross-examination that is repetitive, prejudicial, confusing of the issues or of marginal relevance and unless the defendant can show that the prohibited cross-examination would have produced "a significantly different impression of the witnesses' credibility," the court's exercise of its discretion to limit such cross-examination does not constitute a Confrontation Clause violation. (*Ibid.*; see similarly *People v. Smith* (2007) 40 Cal.4th 483, 513.) Further, an error in limiting cross-examination will not support a reversal of the criminal conviction unless a reasonable jury might have had "a significantly different impression of [the witness's] credibility" if the defense had been permitted to pursue his proposed line of questioning. (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 684, applying the standard set forth in *Chapman v. California* (1967) 386 U.S. 18.)

As defense counsel did not object to the trial court's ruling (and in fact expressly acquiesced in it), Henly cannot now be heard to contend that the trial court abused its discretion in limiting Henly's cross-examination of Officer Castro about the basis for the termination. Even if the circumstances were otherwise, however, we would in any event conclude that any error by the court was harmless. Officer Castro's testimony was limited and followed the extensive testimony by Officer Marshall regarding the chase and Henly's identity as the driver. The jury also heard the tape of Brown's 911 call placing

Henly in the car earlier in the evening, as well as her statements to Officer Marshall that Henly owned the car and had the keys to it in his possession when he walked away from the scene. Further, unlike the situation involving his termination, there was no indication that Officer Castro had any reason to lie about the incident in question. Under the circumstances, the introduction of evidence that Officer Castro was terminated for lying about the cause of a dent in his patrol car would not have given a reasonable jury "a significantly different impression" of Officer Castro's credibility. Accordingly, any error on the part of the trial court does not support a reversal of the judgment.

3. *Imposition of an Upper Term Sentence*

An individual charged with a crime has a constitutional right to have a jury determine proof of the crime beyond a reasonable doubt. (*United States v. Booker* (2005) 543 U.S. 220, 230.) This constitutional right encompasses a jury's determination of all the elements of the crime, as well as any other factor (except for the fact of a prior conviction) that may be used to increase the punishment for the crime beyond the statutory maximum. (*Blakely v. Washington* (2004) 542 U.S. 296, 301-302 (*Blakely*).) Thus, questions as to whether the charged offense was a hate crime or involved great bodily injury must be submitted to a jury and proven beyond a reasonable doubt or admitted by the defendant before those facts may provide the basis for imposing punishment above the statutory maximum. (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490; *Jones v. United States* ( 1999) 526 U.S. 227, 251-252.) Prior to a recent amendment of Penal Code section 1170, subdivision (b), the statutory maximum in California was the middle term. (*Cunningham v. California* (2007) 549 U.S. ___ [127 S.Ct. 856, 871]; *People v. Black* (2007) 41Cal.4th 799, 816 (*Black*).)

The one factor that is authorized to provide the basis for increased punishment based on judicial fact-finding using a preponderance of the evidence standard is "the fact of a prior conviction[.]" (*Blakely, supra*, 542 U.S. at p. 301.) For this purpose, "the fact of a prior conviction" refers to the defendant's recidivism, a factor unrelated to the commission of the charged offense but which was itself established through procedures satisfying the constitutional guarantees of fair notice, the use of a reasonable doubt standard and jury trial and on which courts have historically been permitted to rely to increase an offender's sentence. (*Almendarez-Torres v. United States* (1998) 523 U.S. 224, 230, 243-244, 249 (*Almendarez-Torres*).)

Although there is some question as to the precise scope of "the fact of [a] prior conviction," California courts have held that the *Almendarez-Torres* exception "is not limited simply to the bare fact of a defendant's prior conviction," but also includes matters involving the more broadly framed issue of recidivism, such as whether the prior convictions qualified as "serious felonies" or whether they were numerous. (*People v. McGee* (2006) 38 Cal.4th 682, 704, 709, italics omitted [judicial determination that an out-of-state robbery conviction qualified as a serious felony under California law]; *People v. Banks* (2007) 149 Cal.App.4th 969, 973 [judicial determination that the defendant had numerous priors and not done well on probation and parole]; *People v. Thomas* (2001) 91 Cal.App.4th, 212, 221.) As relevant here, the California Supreme Court has explained:

> "The determinations whether a defendant has suffered prior convictions, and whether those convictions are 'numerous or of increasing seriousness' . . . require consideration of only the number,

> dates, and offenses of the prior convictions alleged. The relative seriousness of these alleged convictions may be determined simply by reference to the range of punishment provided by statute for each offense. This type of determination is 'quite different from the resolution of issues submitted to a jury, and is one more typically and appropriately undertaken by a court.' [Citation.]" (*Black, supra*, 41 Cal.4th at pp. 819-820, fn. omitted.)

Here, Henly admitted that he had suffered two prison priors and one strike prior, as alleged in support of the enhancement allegations of the complaint. Although convictions and adjudications that provide the basis for the imposition of enhancements cannot also be relied on as a basis for imposing an aggravated sentence (Pen. Code, § 1170, subd. (b)), the probation report identified a number of other prior convictions and juvenile adjudications in Henly's criminal record, extending back almost 24 years.

In imposing sentence, the trial court lamented "[t]he tragedy . . . is that I can't give Mr. Henly more time than eight years. He hasn't learned. . . . He continually violates probation. He violates parole. He goes back and . . . does the same activity he did before." It found no mitigating circumstances and that Henly's prior convictions, his status as a parolee at the time of the charged offense and his prior performance on probation and parole justified the imposition of an aggravated sentence. (See Cal. Rules of Court, rule 4.421 (b)(2).) In accordance with the foregoing precedent, such factors normally provide a basis on which an upper term sentence may be imposed. (*Black, supra*, 41 Cal.4th at pp. 819-820.)

Henly makes two arguments as to why the court's reliance on his prior convictions in deciding to impose the upper term in this case violates his constitutional right to a jury trial. First, he contends that the court could not rely exclusively on the probation report

as a basis for its decision. Second, he asserts that even if the court could properly rely on the probation report to determine the number and seriousness of his prior offenses, the court could not rely on his juvenile offense history because a juvenile offender does not have the right to a jury trial. We address these arguments in turn below.

A. Reliance on the Probation Report as Establishing Henly's Criminal History

Citing the United States Supreme Court's decision in *Shepard v. United States* (2005) 544 U.S. 13 (*Shepard*), Henly contends that the trial court could not constitutionally rely on the probation report to establish his prior convictions and juvenile adjudications other than his convictions in 1988, 1990 and 2004, which he admitted. His contention is misplaced, however.

*Shepard* involved the application of the Armed Career Criminal Act (18 U.S.C. § 924(e) (the Act)), which imposed a mandatory 15-year minimum sentence on any person who was found guilty of the federal offense of being a felon in possession of a firearm after having been previously convicted of a "violent felony" on three separate occasions. (*Shepard, supra,* 544 U.S. at p. 16.) After the defendant pleaded guilty to the gun possession charge, the government in *Shepard* introduced evidence that he had previously been convicted of burglary in Massachusetts; it argued that, although only a burglary involving an unlawful entry into a building or structure (a "generic burglary") qualified as a violent felony under the Act (see *Taylor v. United States* (1990) 495 U.S. 575, 599, 602) and the Massachusetts law defined burglary to include an unlawful entry into a car or boat, the sentencing court could look to the underlying police reports and complaint applications to establish that the prior burglary was a generic burglary that

qualified as a "violent felony" and thus justified an enhanced sentence under the Act. (*Shepard, supra*, 544 U.S. at p. 17.)

The *Shepard* court rejected the prosecution's argument. It concluded that, as a matter of federal statutory interpretation, a sentencing court could not consider matters other than the statutory elements (and in limited circumstances, charging documents and jury instructions) for the purpose of increasing the defendant's sentence beyond the statutory maximum proscribed for possession of a firearm by a felon under the Act. (*Shepard, supra*, 544 U.S. at pp. 16, 23, 24-25.) After recognizing that this interpretation was required by its own precedent, the court also noted that a contrary interpretation might make the Act constitutionally infirm. It explained:

> "In a nongeneric State [that recognizes burglary of a boat or a car], the fact necessary to show a generic crime is not established by the record of conviction as it would be in a generic State [that limits burglary to a building] when a judicial finding of a disputed prior conviction is made on the authority of [*Almendarez-Torres*]. The state statute requires no finding of generic burglary, and without a charging document that narrows the charge to generic limits, the only certainty of a generic finding lies in jury instructions, or bench-trial findings and rulings, or (in a pleaded case) in the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea. In this particular pleaded case, the record is silent on the generic element, there being no plea agreement or recorded colloquy in which Shepard admitted the generic fact.
>
> "Instead, the sentencing judge considering the [Act] enhancement would (on the Government's view) make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea, and the dispute raises the concern underlying *Jones* and *Apprendi*: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence. While the disputed fact here can be described as a fact about a prior

> conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez- Torres* clearly authorizes a judge to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality . . . therefore counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea . . . ." (*Shepard, supra*, 544 U.S. at pp. 25-26.)

Based on the language of the second quoted paragraph from *Shepard*, Henly asserts that a sentencing court cannot rely on the information provided in a probation report to make factual findings that provide the basis for increasing a defendant's sentence beyond the statutory maximum because that evidence was not part of the record of the prior conviction. However, *Shepard* altered neither the federal constitutional law allowing a court to consider prior criminal history as a sentencing factor (see *United States v. Mattix* (8th Cir. 2005) 404 F.3d 1037, 1038) nor California state law, which allows the prosecution to establish the fact of a prior conviction by introducing any evidence that meets applicable rules of admissibility, regardless of whether that evidence is contained in the "record of conviction" for the prior offense. (*People v. McGee, supra*, 38 Cal.4th at p. 691; *People v. Martinez* (2000) 22 Cal.4th 106, 116; see also Pen. Code, § 1170, subd. (b).)

Further, none of the aggravating factors considered by the court here involve the type of fact finding beyond the record of prior conviction that the *Shepard* court found to require presentation to a jury. Henly's prior convictions, as well as the prior revocations of his parole and probation, were matters of record that were listed in the probation report. The court did not engage in any "fact finding" in the traditional sense, but instead

merely took notice of the fact of the prior juvenile adjudications, adult convictions and probation and parole revocations, without any objection on Henly's part. Based on the nature of the matters to be established, the sentencing court's consideration of the prior convictions, adjudications and revocations did not run afoul of *Shepard*.

B. Reliance on Henly's History of Juvenile Adjudications

Henly also argues that, even if *Shepard* did not preclude the court from using the probation report as a basis for determining the number and seriousness of his prior offenses, the court could not rely on his juvenile offense history because a juvenile offender does not have the right to a jury trial, a protection acknowledged by *Apprendi* as a predicate to a "prior conviction" for purposes of sentence enhancement. This issue is one on which federal and state intermediate appellate courts have split (see *People v. Grayson* (2007) 155 Cal.App.4th 1059, and cases cited therein) and is currently pending before the California Supreme Court. (*People v. Nguyen* (2007) 152 Cal.App.4th 1205, review granted Oct. 10, 2007, S154847.) Pending a contrary decision by the high court on this issue, however, we will adhere to the existing published opinions of the California intermediate appellate courts unanimously holding that a trial court is entitled to consider a defendant's history of juvenile adjudications, as well as his adult convictions (which in this case were numerous and increasing in seriousness in their own right), in imposing the upper term sentence.

4. *Imposition of an Enhancement Twice Based on a Single Prior Prison Term*

Finally, Henly argues that the trial court improperly imposed two one-year enhancements for a single prison prior. He correctly points out that a court cannot

impose more than one enhancement for the same underlying prison prior, even where the defendant is paroled but later re-incarcerated for violating parole (Pen. Code, § 667.5, subd. (g); *People v. Espinoza* (1979) 99 Cal.App.3d 59, 71), and argues that the court improperly imposed two one-year prison prior enhancements as a result of his imprisonment for the 2003 state offense. However, although the trial court did erroneously refer to the case number for the 2003 state offense in connection with both enhancements, a review of the record establishes that the first reference was in error and that the court in fact intended to impose the first enhancement as to the term Henly served for the 1989 federal offense.

At the sentencing hearing, the court described Henly's criminal history and specifically identified his incarceration for the 1989 federal offense as "the first prison prior" and his incarceration for the 2003 state offense as "the second prison prior." At no time did the court indicate that it intended to strike the prison prior allegations arising out of the 1989 federal offense; to the contrary, in imposing sentence, the court indicated its frustration that it could not impose a greater sentence than 8 years. Although the court stated that it was imposing "[o]ne year for the prison prior in SCD-174628 [the prison term served as to the 2003 state offense]" and an "[a]dditional year for the second prison prior [relating to that same case]," the record is clear that it intended to impose a prison prior enhancement as to the 1989 federal offense as well as relating to the 2003 state offense.

Under these circumstances, we need not remand the matter for resentencing but instead may correct the error by modifying the judgment to specify that the first prison

prior enhancement related to the 1989 federal offense. (Pen. Code, § 1260; see *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813; *People v. Menius* (1994) 25 Cal.App.4th 1290, 1294-1295.)

DISPOSITION

The judgment is modified to specify that the first prison prior enhancement related to the 1989 federal offense rather than the 2003 state offense and the trial court is directed to prepare an amended abstract of judgment reflecting this modification. As so modified, the judgment is affirmed.

McINTYRE, J.

WE CONCUR:

NARES, Acting P.J.

AARON, J.

# DECLARATION OF SERVICE

Case Name: People v. Henly No. D049072

I, Patricia L. Brisbois, declare:

I am an active member of the State Bar of California and am not a party to the above-entitled action. My business address is P.O. Box 518, Tualatin, Oregon 97062.

I served the attached: **APPELLANT'S PETITION FOR REVIEW** of which a true and correct copy of the document filed in the cause is affixed, by placing a copy thereof in a separate envelope for each addressee named hereafter, addressed to each such addressee respectively as follows:

Attorney General
Raquel M. Gonzalez
110 West "A" St., Ste. 1100
P.O. Box 85266
San Diego, CA 92101

Appellate Defenders, Inc.
555 West Beech St., Ste. 300
San Diego, CA 92101

Clerk, Court of Appeal
Fourth Appellate Dist., Div. One
750 B Street, Suite 300
San Diego, CA 92101

San Diego County Superior Court
Appellate Division
P.O. Box 120128
San Diego, CA 92101

San Diego District Attorney
Deana Bohenek
Hall of Justice
330 West Broadway, Ste. 1100
San Diego, CA 92101

Thomas J. Ochs
Law Offices of Thomas John Ochs
P.O. Box 7074
San Diego, CA 92107

David Lee Henly

Each envelope was then sealed and with the postage thereon fully prepaid deposited in the United States mail by me at Tualatin, Oregon on January 18, 2008.

I declare under penalty of perjury that the foregoing is true and correct, and this declaration was executed at Tualatin, Oregon, on January 18, 2008.

PATRICIA L. BRISBOIS
(Typed Name)

(Signature)

Court of Appeal, Fourth Appellate District, Div. 1 - No. D049072
**S160257**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

THE PEOPLE, Plaintiff and Respondent,

v.

DAVID LEE HENLY, Defendant and Appellant.

---

The petition for review is denied.

George, C.J., and Corrigan, J., were absent and did not participate.

SUPREME COURT
**FILED**

FEB 2 7 2008

Frederick K. Ohlrich Clerk

Deputy

BAXTER
Acting Chief Justice

## PROOF OF SERVICE BY MAIL
(C.C.P. SEC. 1013 (a) & 2015.5; 28 U.S.C. SEC. 1746)

I, Robert Lee Kirby, DEPOSE AND STATE UNDER THE PENALTY OF PERJURY THAT I AM OVER 18 YEARS OF AGE, THAT I AM NOT A PARTY TO THE ATTACHED PETITION FOR 2254 - Writ of Habeas Corpus BY A PERSON IN STATE CUSTODY IN PROPIA PERSONA AND THAT I DID ON THE BELOW CASE, DEPOSIT IN THE UNITED STATES MAIL AT Norco, CALIF. THE ORIGINAL AND 2 COPIES OF THE ABOVE DESCRIBED DOCUMENT WITH POSTAGE FULLY PRE-PAID THEREON FOR MAIL TO: Clerk of U.S. District Court
Room 4290
880 front St.
San Diego, CA 92101-8900

DATE EXECUTED, 6-9-08, BY R. Kirby
(DECLARANT)

T-93155
(PRISONER)

## PROOF OF SERVICE BY MAIL

RETURN NOTICE OF RECEIVING TO:

David Lee Henly J.R.
C.R.C. Dorm 306-20 Low
P.O. Box 3535
Norco, Calif
92860

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

2254 ✓ 1983
FILING FEE PAID
Yes No
IFP MOTION FILED
Yes No
COPIES SENT TO
Court ProSe

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

FILED
JUN 1 8 2008
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

I (a) PLAINTIFFS

**David Lee Henly Jr.**

DEFENDANTS

**Matt Martel**

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Riverside
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT (IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**David Lee Henly Jr.**
**PO Box 3535**
**Norco, CA 92860**
**V-24196**

ATTORNEYS (IF KNOWN)

**'08 CV 1085 JAH CAB**

II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III

III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX (For Diversity Cases Only) FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).

**28 U.S.C. 2254**

V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

CONTRACT
☐ 110 Insurance
☐ Marine
☐ Miller Act
☐ Negotiable Instrument
☐ 150 Recovery of Overpayment &Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153Recovery of Overpayment of Veterans Benefits
☐ 160 Stockholders Suits
☐ Other Contract
☐ 195 Contract Product Liability

REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Eiectmant
☐ 240 Tort to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

TORTS

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

PERSONAL INJURY
☐ 362 Personal Injury- Medical Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/Accommodations
☐ 444 Welfare
☐ 440 Other Civil Rights

PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence Habeas Corpus
☒ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights

FORFEITURE/PENALTY
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

LABOR
☐ 710Fair Labor Standards Act
720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc.
☐ Security Act

BANKRUPTCY
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

PROPERTY RIGHTS
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

SOCIAL SECURITY
☐ 861 HIA (13958)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS - Third Party 26 USC 7609

OTHER STATUTES
☐ 400 State Reappointment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 810 Selective Service
☐ 850 Securities/Commodities Exchange
☐ 875 Customer Challenge 12 USC
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State
☐ 890 Other Statutory Actions

VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding ☐ 2 Removal from State Court ☐ 3 Remanded from Appelate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

VII. REQUESTED IN COMPLAINT: ☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23 DEMAND $ Check YES only if demanded in complaint: JURY DEMAND: ☐ YES ☐ NO

VIII. RELATED CASE(S) IF ANY (See Instructions): JUDGE Docket Number

DATE 6/18/2008 ~~SIGNATURE OF ATTORNEY OF RECORD~~

R. Mulley

CR